THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALEXANDER BEVERLY, Defendant-Appellant.

First District (4th Division)   No. 76-1408

Opinion filed December 15, 1977.

William C. Starke, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Alexander Beverly, was convicted of possession of heroin (Ill. Rev. Stat. 1969, ch. 38, par. 22—3) after a jury trial in the circuit court of Cook County, and he was sentenced to a term of two to six years. The issues for review are whether defendant was proved guilty beyond a reasonable doubt and whether the State established a proper foundation for the introduction of the narcotics into evidence.

Officer James Hanrahan testified that on May 20, 1971, he procured a search warrant for the defendant and the premises at 60 North Central, apartment 310, Chicago, Illinois. The next morning at about 8:40 a.m., Officer Hanrahan and his two partners went to that address. As they approached apartment 310, the door opened, and they saw defendant standing in the door with an attaché case in his hand. Officer Hanrahan identified himself as a police officer, gave a copy of the search warrant to the defendant and briefly searched him for weapons. Officer Hanrahan picked up the attaché case and directed the defendant to sit on a couch next to another man who was already sitting there. His partner went to the bedroom and brought out a woman dressed in a housecoat.

Officer Hanrahan opened the attaché case and found a brown paper bag containing a number of tinfoil packets. He conducted a field test on the white powder from one of the packets and got a positive reaction for an opium derivative. He then placed defendant under arrest and conducted a search of the entire apartment. As a result of this search, the other man and the woman in the apartment were placed under arrest. Approximately 20 minutes after the police entered the apartment there was a knock on the door, and Lonnie Branch was admitted. Officer Hanrahan testified Branch was a well-known wholesale dealer of narcotics. He testified Branch was not carrying an attaché case, and he was placed under arrest on another charge.

Officer Hanrahan testified he kept the brown bag containing the tinfoil packets in his possession until the time it was inventoried. At that time, he initialed the paper bag containing the tinfoil packets and placed it inside an evidence envelope. Officer Kinnane, his partner, placed a piece of cellophane tape over the flap and handed the envelope back to him, and they both delivered it to the Chicago Police Department Crime Laboratory.

Officer John Kinnane's testimony corroborated that of Officer Hanrahan. He also stated that, when the brown paper bag and its contents were inventoried, he sealed the envelope with tape and affixed his name across the flap.

When the State called Robert Boese, a forensic chemist employed by the Chicago Police Department, defense counsel offered to stipulate to his

expertise and to a one-page report. The State accepted the stipulation with respect to his expertise but desired to elicit testimony from him. Boese stated the first time he saw the sealed envelope containing the tinfoil packets was on May 24, 1971. When he opened it, he found a brown paper bag containing 108 tinfoil packets. He took out five packets at random and verified that white powder was inside. He retained two packets for his test and returned the other three to the paper bag with the rest of the packets. Boese testified that five chemical and two microcrystalline tests determined the material in both packets contained diacetylmorphine hydrochloride (heroin). He estimated the total weight of all the packets to be 20 grams. The 106 packets which were not tested were placed in the polyethylene bag and heat sealed in the laboratory to prevent tampering.

Versie Carter testified for the defense. She stated that on May 21, 1971, at 7:30 or 8 a.m., she was in her apartment with Mr. Grossley, a friend. At that time, defendant arrived and stayed for 15 or 20 minutes. He did not have an attaché case with him upon arriving or leaving. About three or four minutes later the police entered the apartment with defendant. A short time after that, there was another knock on the door, and when one of the policemen opened the door, Lonnie Branch walked in. A policeman stated, "oh look what we got here, we got the big man Branch, Lonnie Branch." She stated that Branch had a black briefcase and that he "slid it down by the T.V." When the police officers opened the black attaché case, she saw a brown bag taken out of it. She also testified that she was charged with possession of heroin, the same as defendant, but the charges against her were dropped.

Defendant testified that on May 21, 1971, between 7:30 and 8 a.m., he went to Versie Carter's apartment but did not have an attaché case with him. When he left about 15 minutes later, he was not carrying an attaché case. He went to the elevator and was stopped by three policemen. They took him back to the apartment and searched the premises. When he was seated, the doorbell rang, and the police officer who answered the door stated, "oh look who we have here, Mr. Big himself." Branch had an attaché case and "he slid it right down beside the T.V." which was by the door. Several minutes later, one of the officers searched the case and said he had found the narcotics. Defendant said that he had seen Branch about two months after the arrest with the same black briefcase.

Defendant first contends he was not proved guilty beyond a reasonable doubt, asserting that his testimony and that of Versie Carter left a reasonable doubt that he was responsible for the presence of the narcotics. Their testimony, that defendant neither entered nor left the apartment with an attaché case and that the case was brought in by Lonnie Branch, was contradicted by both police officers. Where there is a

conflict in the testimony it is within the province of the trier of fact to resolve the conflict and determine which witness or witnesses are to be believed, and the conflict in testimony does not in itself establish a reasonable doubt of defendant's guilt. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Amos* (1977), 46 Ill. App. 3d 899, 361 N.E.2d 861.) The jury apparently chose to believe the police officers, rather than the defense testimony, and we find no basis in the record to challenge their determination.

■■■ Defendant next contends the State failed to prove an unbroken chain of custody of the narcotics admitted into evidence. He specifically argues that there was no testimony as to who received the envelope at the crime laboratory, and there was no testimony where the envelope was kept in the three-day period from the time it was delivered until Robert Boese, the chemist, received the envelope. In *People v. Smith* (1974), 21 Ill. App. 3d 366, 316 N.E.2d 170, the court held that the foundation for the introduction of an object may be laid either through its identification by a witness or through establishment of a chain of possession. However, both identification and establishment of a chain of possession are not required. Such a requirement would pose an unnecessary burden and would not assure a fairer trial of the accused. In this case, just as in *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837, the envelope containing the narcotics was sealed with cellophane tape after one of the officers wrote his name on the back flap, and the chemist who examined the narcotics found the envelope in the same sealed condition with no suggestion of tampering, alteration, or substitution. (Also see *People v. Litterio* (1975), 32 Ill. App. 3d 255, 259, 336 N.E.2d 190.) In *People v. Hicks* (1974), 17 Ill. App. 3d 541, 544, 308 N.E.2d 207, the court specifically held that the failure to indicate to whom the evidence was delivered at the crime laboratory was not fatal. Moreover, any lack of foundation is not fatal because of Officer Hanrahan's testimony that his field test for an opium derivative was positive. (*People v. Litterio.*) We find there was an adequate foundation for the admission of the narcotics into evidence.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LINN and ROMITI, JJ., concur.