THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN L. GRAYSON, Defendant-Appellant.

First District (1st Division)    No. 79-594

Opinion filed October 14, 1980.—Rehearing denied November 10, 1980.

Fe Fernandez, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

John L. Grayson (hereinafter defendant) brings this appeal from a conviction for possession of a controlled substance after a jury trial and a

sentence of four years. On appeal he urges that: (1) the State did not establish the chain of custody of a bag of heroin allegedly recovered from him; (2) he was not proved guilty beyond a reasonable doubt; and (3) he was denied a fair trial because of the improper and prejudicial statements made by the prosecutor during his closing argument.

We affirm.

The following testimony adduced at the defendant's trial is pertinent to the issues raised on appeal. Police officer Robert Gerwig, a tactical unit officer, testified that he and his partner, Michael Cronin, were conducting a theft investigation and surveillance at 4213 West Monroe on November 15, 1977, at approximately 8:20 p.m. The officers were conducting their surveillance from a vacant first-floor apartment of that building when the defendant entered the building and went up to the second floor. After Grayson went upstairs, Gerwig left the first-floor apartment and crouched behind a pillar so that he could observe Grayson's actions. From this vantage point, he saw the defendant knock on the door of the second-floor apartment and when the door was opened ask for a $15 bag of dope. The person inside the apartment disappeared but returned in a few minutes at which time the two parties exchanged something. After the exchange, Grayson began to leave the building. When he reached the first floor, however, the officers identified themselves. According to Gerwig, at this time the defendant threw his hands into the air and as he did a clear plastic bag flew into the air and landed on the stairs between the first and second floors. Gerwig retrieved the bag and observed that it contained a tan powder similar to heroin. Grayson was arrested. Subsequently, others present in the second-floor apartment were arrested. The stolen camera was recovered at this time.

On cross-examination, Gerwig acknowledged that his police report did not state that Grayson made an exchange at the second-floor apartment. He also stated that it was his and his partner's belief that the Mason brothers who lived in the second-floor apartment were drug dealers and that they wanted to get them. However, he denied asking Grayson to help him "get" Mason or knowing that Grayson was on parole.

Officer Michael Cronin corroborated Gerwig's testimony with the following additional testimony. Cronin testified that he gave the defendant his *Miranda* rights after his arrest and searched him. After the arrest, the defendant was asked where he "copped the heroin" to determine the level of his cooperation. Shortly after Grayson's arrest, a second man was arrested as he left the Mason apartment. After this arrest, the police arrested the remaining occupants of the apartment and recovered 31 bags of heroin packaged similarly to the bag retrieved from Grayson. According to Cronin, the bag taken from Grayson was held by Gerwig until it was inventoried with the other bags by Cronin at the police station. Its

inventory number was 513461. Cronin also testified that there was some discussion at the station concerning the fact that Grayson could talk to the State's Attorney if he changed his mind about testifying about Robert Turner. The record fails to disclose Turner's identity. Cronin denied threatening the defendant by telling him he knew he was on parole and that he would put a bag on him if he didn't help him and his partner get Jack Mason.

Christine Provost, a chemist employed by the Chicago police department, stated that on August 7, 1978, she received a plastic bag which contained evidence folder number 513461 containing a small plastic bag wrapped in tape with powder in it. After weighing the tan powder and conducting a variety of tests on it, she concluded that the tan powder showed the presence of heroin. The substance, she noted, had originally been examined by Robert McMillan, a chemist formerly employed by the department.

Grayson testified in his own behalf that he had been a heroin addict in 1974-1975, was convicted of robbery in 1975 for which he spent three years in the penitentiary, and used heroin after his release in 1977. On November 15, 1977, he went to the second-floor apartment at 4213 West Monroe to see either "Mukie" or Jack Mason. He planned to trade a bottle of pills containing "Tees and Blues" for a bag of heroin, however, when he got to the apartment Jack Mason told him that he did not have enough to trade. Grayson had bought drugs from Mason once in the past but had paid cash for them. As he began walking down the stairs, Officers Gerwig and Cronin appeared. He tried to run upstairs, but Cronin pushed him against the wall and held him by the throat. Gerwig covered his mouth and told him not to scream or swallow. At the time of his arrest he was in possession of the pills and a dagger and these items were taken from him when he was searched.

After his arrest Grayson was taken into the first-floor apartment where he was urged to incriminate Mason. Cronin told Gerwig to go outside and look for narcotics because he knew the defendant had dropped some. After the defendant was arrested, a man named Gil Horton was also arrested. During the arrest of the second-floor apartment's occupants some time later, Grayson and Horton were kept in the kitchen of the second-floor apartment. While in that apartment, Grayson saw two policewomen search two women and recover 47 bags of heroin. One of the policewomen handed one of the bags to Cronin. Grayson denied having gotten any heroin from Jack Mason on November 15, 1977, or throwing a bag of heroin into the air upon being confronted by the two police officers. On rebuttal, Cronin denied having recovered a dagger from the defendant.

After hearing all of the evidence, the jury returned a verdict of guilty.

On November 21, 1978, after the defendant's post-trial motion was denied, he was sentenced to four years' imprisonment in the Illinois Department of Corrections. A timely notice of appeal was filed.

The defendant initially argues that introduction of a bag containing heroin allegedly recovered from him was error because the State failed to establish a sufficient chain of custody for the heroin. His principal contention is that, as the chemist who originally analyzed the substance is no longer employed by the Chicago police department and his whereabouts unexplained, it follows that the chain of custody was not established and that, therefore, he is entitled to a discharge. We disagree.

■■ Drugs may be admitted into evidence where the State negates the possibility of tampering or substitution. (*People v. Perine* (1980), 82 Ill. App. 3d 610, 402 N.E.2d 847; *People v. Hanson* (1977), 44 Ill. App. 3d 977, 359 N.E.2d 188.) The State provides the necessary foundation for the admission of such evidence either where the drug is identified by a witness or where the chain of possession is established. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Beverly* (1977), 55 Ill. App. 3d 872, 371 N.E.2d 148; *People v. Smith* (1974), 21 Ill. App. 3d 366, 316 N.E.2d 170.) In either case, the State need not exclude all possibility that the evidence may have been tampered with, but rather, only that there is a reasonable probability that the evidence has not been tampered with or substituted. *People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710; *People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480; see *People v. Madden* (1978), 57 Ill. App. 3d 107, 372 N.E.2d 851.

Officer Cronin testified that he placed the bag containing the tan powder into an evidence folder, placed an inventory number on it, affixed his signature to the folder, sealed it, and then placed it into a safe at the 11th District Tactical Station. At trial he identified the evidence folder as the same one which contained the bag recovered from the defendant on the basis of its inventory number and his signature. However, neither he nor Officer Gerwig could identify the bag as the one they recovered from the defendant. The chemist, Christine Provost, testified that she had received the sealed evidence folder with the instant inventory number from her superior for analysis. The signature and initials of the first chemist to analyze the substance, Robert McMillan, were on the evidence folder. She could not remember whether his initials were also on the bag. She testified that, after she conducted tests on the substance which revealed that it contained heroin, she resealed the evidence folder with tape and placed her signature on it. At trial she identified the evidence folder and the bag as the ones which she had previously received.

■■ While the State may have explained the whereabouts of McMillan and brought in other employees to explain the entire period of custody, the defendant has not cited any authority, and we are not convinced that

such failure to conclusively establish each and every link in the chain of custody mandates the dismissal of the State's case. Moreover, we have no evidence to support the defendant's suggestion that this was not the same bag which was recovered from the defendant by the police officers notwithstanding the .24 discrepancy in the weight of the heroin as testified to by Officer Gerwig and the chemist, Provost. Accordingly, we believe the trial court was correct in admitting the bag of heroin allegedly retrieved from the defendant for consideration by the jury.

The defendant's second argument is that the testimony of Officers Gerwig and Cronin was so improbable and contrary to human experience that it was insufficient to find the defendant guilty beyond a reasonable doubt. The defendant urges that the goal of the officers' surveillance on November 15, 1977, was to obtain an informant and not to conduct a stake out to recover a stolen camera. In support of this assertion, the defendant points to the fact that the raid on the Monroe Street apartment had a narcotics raid number and that the instant police officers' tactical unit was responsible for vice and informants. The defendant also asserts that the officers' story that the defendant purchased heroin from one of the Mason brothers is unlikely and improbable in that they failed to mention the alleged exchange between the man at the door of the apartment and Grayson in the police report prepared incident to the raid. The defendant also points out that shortly after Grayson was arrested the police officers asked him where he had "copped the heroin." While Cronin testified that this question was designed to determine the extent of Grayson's cooperation, the defendant suggests that if the police did view the transaction, they would have immediately conducted a raid on the apartment because at that time they would have had the requisite probable cause to believe that heroin was being sold from these premises. The defendant also points to the fact that the police proceeded upstairs to the second-floor apartment only after three bags of heroin were found on Gil Horton after he exited the apartment. The defendant finally urges that the officers' testimony was improbable because it is very unlikely that a bag of heroin weighing .27 grams would fly through the air as described by the officers. The defendant suggests that given the nature of the officers' police unit, the defendant's testimony that the officers asked him to "give them Jack Mason" is more believable than the officers' denial that they sought the defendant's cooperation. The defendant also notes that if the Mason brothers had only a small supply of heroin as indicated by the amount recovered in the raid, the defendant's testimony that Mason told him that he didn't have enough heroin to trade would be very believable.

The State contends that the issues raised by the defendant pertained to the credibility of the witnesses and that as the jury heard the evidence, observed the witnesses, and made their assessments of credibility, we should not disturb their finding. We agree. It is well established that a

reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937; *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Reed* (1980), 84 Ill. App. 3d 1030, 405 N.E.2d 1065.) Furthermore, the testimony of a single law enforcement officer, if positive and credible, is enough to support a conviction in a narcotics case. *People v. Borges* (1980), 88 Ill. App. 3d 912, 410 N.E.2d 1076; *People v. Mickelson* (1975), 32 Ill. App. 3d 813, 336 N.E.2d 806.

█▌ We find ample evidence in the record to support the judgment of the trial court. The arresting officers testified that they observed the defendant enter the apartment building and proceed upstairs. Officer Gerwig testified that from his position behind a pillar of the stairway he witnessed the alleged drug transaction. Both officers testified to the fact that, when they surprised the defendant as he returned to the first floor, a packet flew up in the air and was recovered by the officers. Officer Cronin denied finding any pills or a dagger on the defendant incident to his search of the defendant after his arrest. The defendant was arrested at that time so that no issue was raised as to an adequate identification. The defendant admitted in his testimony that he attempted to buy drugs on the instant occasion but denied in fact purchasing any drugs on that occasion. The defendant also denied that he had any heroin in his possession at the time of his arrest, but did admit that he had a dagger and a bottle of pills on him. The jury obviously rejected the defendant's testimony in favor of the officer's testimony. We do not think that that determination was so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Donald.*

The defendant finally contends that he was denied a fair trial by the improper and prejudicial statements of the prosecutor during closing argument. Initially, the defendant cites various instances during closing argument where the State's Attorney stated that the defendant's testimony consisted primarily of lies. Our review of the record reveals that the defendant failed to object to any of these statements. It is well established that a defendant may not raise an issue on appeal as to the impropriety of statements made during closing argument where no objection was made below. (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385; *People v. Sinclair* (1963), 27 Ill. 2d 505, 190 N.E.2d 298.) Thus, we will not consider this argument.

We turn then to a consideration of the two remaining allegedly erroneous remarks made by the prosecutor. During closing argument the prosecutor remarked that the credibility of the two police officers,

Gerwig and Cronin, was not on the same level as the credibility of the defendant. The defendant objected to this statement but the trial court overruled the objection. Subsequently, the prosecutor noted that the defendant's prior conviction destroyed his credibility. The defendant alleges that the prosecutor's statements constituted a misstatement of the law because a defendant's testimony is given no less credibility than the testimony of a police officer. While we agree with this general premise, it is also established that closing argument may be framed around the jury instructions which will be given. (*People v. Jones* (1980), 86 Ill. App. 3d 278, 407 N.E.2d 1121; *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124.) Moreover, it is equally clear that a prosecutor may comment on the credibility of a defendant. *People v. Sinclair; People v. Jackson* (1974), 19 Ill. App. 3d 689, 312 N.E.2d 405, *cert. denied* (1975), 420 U.S. 935, 43 L. Ed. 2d 412, 95 S. Ct. 1144.

■■ The instructions given by the trial court included instructions explaining that the credibility of a witness is to be determined by the jury as trier of fact, that the credibility of the defendant should be determined in the same manner as is the testimony of any other witness, and that the defendant's previous conviction may be "considered by you only insofar as it may affect his credibility as a witness." (Illinois Pattern Jury Instructions, Criminal, No. 3.13 (1968).) The prosecutor's remarks referred to the credibility of the defendant in light of his admission that he was a convicted felon, drug addict, and that he had gone to the Monroe Street apartment on November 15, 1977, to buy heroin. The statement also recognizes that the officers were doing their duty on the night of the incident while the defendant was admittedly attempting to buy illegal drugs. Even if the prosecutor's comment arguably confused the jury as to the starting point for assessing credibility, the jury instructions made it clear that witnesses are initially considered equally credible, but that the trier of fact could consider the previous conviction in determining the defendant's credibility.

Nor do we find that the prosecutor's statement that possession of "Tees and Blues," the pills the defendant intended to trade, constituted the same offense as possession of heroin, denied the defendant a fair trial. The defendant argues that this statement was erroneous because there was no evidence in the record that "Tees and Blues" are controlled substances, and because this statement provided the State with an alternative method of proving their case. If the jury accepted this statement, the defendant maintains, it could have convicted the defendant of possession of a controlled substance for possession of "Tees and Blues" rather than heroin, as charged.

■■ We agree that this statement was improper because it referred to facts not in evidence. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *People v. White* (1980), 86 Ill. App. 3d 19, 407 N.E.2d 572;

*People v. Romo* (1980), 85 Ill. App. 3d 886, 407 N.E.2d 661.) However, an error in closing argument will be deemed reversible error only if it is so prejudicial that it was a material fact in determining a guilty verdict. (*People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840; *People v. Fort* (1976), 44 Ill. App. 3d 62, 357 N.E.2d 1365; see *People v. Weathers*.) Additionally, each case must be determined on its own facts. (*People v. Weathers*.) Here the trial court sustained a defense objection to this statement and instructed the jury that the opening and closing argument of counsel did not comprise evidence. (*People v. Farmer* (1963), 28 Ill. 2d 521, 192 N.E.2d 916; *People v. White*.) We cannot say that the jury was unduly influenced or misled in light of the action taken by the court to cure the error. Moreover, we do not think that the statement was a substantial factor in the jury's verdict where the evidence against the defendant was strong. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280; *People v. Romo*.

In so finding, we distinguish this case from *People v. Weathers*. There the defendant's objection to the prosecutor's reference in his closing argument to facts not in evidence was sustained. The appellate court found the remarks not substantially prejudicial to the defendant, because evidence of his guilt was overwhelming. Despite these facts, the supreme court reversed. However, there, the remarks of the prosecutor were much more serious and inflammatory than those at issue here. As the court explained, the prosecutor charged the defendant and his attorneys with lying, his attorneys with attempting to create a reasonable doubt by "confusion, indecision, and misrepresentation," stated that the defendant was a habitual criminal who has never been caught before where there was no evidence of this in the record, and stated that the fact that the defendant had presented a defense indicated that he and his attorneys knew that they had been proved guilty beyond a reasonable doubt by the State's case. A prosecutor is allowed some latitude in his closing argument. (*People v. Fort*.) In the *Weathers* case he far exceeded permissible limits. In the case before us there was no doubt that the prosecutor's statements were erroneous; however, the question is not whether closing argument was improper but whether it reached a magnitude of impropriety which deprived the defendants of a fair trial. We see no parallel between this case and the *Weathers* case on the question of prejudicial remarks and, therefore, find that it is not controlling here.

For the aforesaid reasons, the defendant's conviction is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.