THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS ROBINSON, Defendant-Appellant.

First District (6th Division)   No. 1—91—1266

Opinion filed September 3, 1993.—Modified on denial of rehearing November 12, 1993.

Michael J. Pelletier and Andrey B. Filipowicz, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara L. Jones, and Michael F. Bonaguro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Following a jury trial, defendant was convicted on two counts of possession of a controlled substance with intent to deliver. On appeal, defendant contends that (1) his arrest was not supported by probable cause; (2) he was deprived of the right to effective assistance of counsel; (3) the State presented insufficient evidence to prove his guilt beyond a reasonable doubt; (4) the trial court erred in denying his motion for a directed verdict; and (5) the sentence imposed by the trial court was excessive.

The record reveals that defendant was arrested at approximately 1 a.m. on September 7, 1990, and was subsequently charged with two counts of possession of a controlled substance with intent to deliver. The controlled substance specified in count I was one gram or more but less than 15 grams of a substance containing cocaine. The controlled substance specified in count II was less than 10 grams of a substance containing phencyclidine (PCP).

At trial, Chicago police officer Larry Regalado testified that on September 7, 1990, he was assigned to a tactical team and was working undercover. Regalado stated that he had received two or three complaints that narcotics were being sold from the second-floor apart-

ment at 107 North Menard in Chicago. In response to these complaints, Regalado and his partner, Officer Barnes, initiated surveillance of the apartment building and immediate vicinity at approximately 12:20 a.m. The officers positioned themselves on the west side of the street about one block away from the building. Regalado stated that he saw approximately 12 people enter the building within a period of 20 minutes.

Based upon his assessment that there was "heavy traffic" in the building at 1 a.m., Regalado requested assistance from another team of officers. Officer Brown and Sergeant Schweiger arrived shortly thereafter, and Regalado informed them of the previous complaints and of his observations during the surveillance. Officer Brown went to the rear of the building, while Regalado and Barnes went to the front door. Regalado testified that he and Barnes were in radio communication with Officer Brown the entire time.

Regalado further testified that he and Officer Barnes went into the building up to the second floor, where there were two apartments. After he knocked at the door marked 107 North Menard, Regalado was asked to identify himself. Upon announcing that he was a police officer, Regalado heard a scuffling sound come from inside, as though people were running in the apartment.

Approximately one minute later, Regalado received a radio transmission from Officer Brown, who said that she had seen a black male without a shirt open a rear window and toss a plastic bag out onto the ground behind the building. About 20 or 30 seconds after Regalado heard this transmission, the door to the apartment was opened by defendant, who was not wearing a shirt.

Officer Regalado testified that once the door was opened, he informed defendant of the complaints that narcotics were being sold. Regalado testified that he observed two black females and some children inside the apartment. Regalado inquired as to whether defendant lived in the apartment, but defendant said that he did not. According to Regalado, he detained defendant in the doorway until Officer Brown was able to come around to the front of the building. When she walked up to the open door of the apartment, Brown identified defendant as the person who had thrown the plastic bag from the window, and she showed Regalado the bag. Once Officer Brown identified defendant as the person who threw the bag out of the window, defendant was arrested and transported to the police station. Regalado acknowledged that defendant was not advised of his constitutional rights until he was taken to the police station.

Regalado denied that he and Barnes entered the apartment, and he testified that defendant was not holding a baby when he opened the apartment door. Regalado also stated that there was no security gate on the door.

Subsequently, Regalado prepared the case report, and Officer Barnes prepared the arrest report. Although Regalado's signature was on the arrest report, he did not read it. Regalado acknowledged that the case report did not include facts about the surveillance or the pedestrian traffic coming in and out of the apartment. The arrest report listed defendant's address as 105 North Menard.

During cross-examination of Regalado, defense counsel attempted to utilize photographs and a diagram of the physical layout of the apartment building. The prosecutor objected, asserting that defense counsel had not disclosed the existence of these exhibits prior to trial. In addition, the prosecutor asserted that defense counsel had showed him the diagram of the apartment building on the first day of trial and showed him the photographs of the apartment immediately before opening statements. Moreover, the prosecutor asserted that defense counsel had not provided him with the names of the two witnesses until the day before trial commenced. In response to the State's objection and the trial court's admonishment, defense counsel stated that he would not use the diagram of the apartment building at trial.

Police officer Regina Brown testified that she became experienced in narcotics investigations during her eight-year assignment to a tactical unit. Brown testified that prior to the date of the defendant's arrest, she had received numerous complaints that drugs were being sold in the apartment building. In response to these complaints, Brown went to the building a day or two before defendant's arrest. Brown stated that she examined the front, side and rear of the building. Based upon these prior observations, Brown had been able to determine which of the windows were in each apartment.

On the date of defendant's arrest, Brown and Sergeant Schweiger were called to assist Regalado and Barnes. When they arrived, Brown went to the rear of the building, and Regalado and Barnes went to the front. Once Brown was in position at the rear of the building, she received a radio transmission from Regalado that he was going to the front door. After she received this transmission, Brown observed a black male with gray hair and without a shirt on come to the rear window. As she watched, Brown saw this man open the window and drop a packet out onto the ground behind the building. The man then closed the window and disappeared from Brown's view. Brown testified that lights illuminated the back of the building and inside the sec-

ond-floor apartment, and she had a clear view of the man at the window. At trial, Brown identified defendant as the man who had opened the window and dropped the packet to the ground.

Brown testified further that when the bag hit the ground, she turned on her flashlight and pointed it toward the packet which had been dropped from the second-floor window. Brown stated that she never lost sight of the packet from the time it came out of the window to the time it hit the ground. The area behind the building was concrete and was clear of any other debris. Brown retrieved the plastic bag and examined its contents. Inside the bag were some foil packets and many smaller clear plastic bags which contained a white substance. At that time, Brown suspected the white substance in the small clear plastic bags to be cocaine, and she believed that the foil packets contained PCP. Brown then made a radio transmission to Regalado and Barnes to inform them of her observations, including a physical description of the person who had tossed the bag out of the window. After doing so, Brown immediately went to the front of the building and walked up the stairs to the second-floor apartment.

Brown arrived at the door to the apartment about two minutes later and observed Regalado and Barnes standing next to the doorway with defendant. Brown told the other officers that defendant was the person she had seen throw the packet out of the rear window. Brown then showed the other officers the packet which she had recovered from the ground behind the building.

Mr. Jose Mantilla was called as an expert witness for the State and testified that he was a forensic chemist employed by the Chicago police department. Mantilla stated that he inventoried and examined the plastic bag recovered by Brown. The foil packets contained crushed green plant material, and the 36 small plastic bags contained white rocky substance. The plastic bag also contained four clear plastic bags which were empty.

Mantilla testified that he randomly selected and weighed two of the four foil packets. The total weight of these packets was 1.1 grams. He then tested the crushed green plant material found in the foil packets, and the results of these tests confirmed that the substance contained PCP. Upon weighing the remaining packets, Mantilla determined that their aggregate weight was 2.2 grams. Mantilla thereafter weighed three of the 36 plastic bags containing the white rocky substance. These three bags weighed a total of .23 grams. Based upon this information, Mantilla estimated that the aggregate weight of the 36 plastic bags was 2.8 grams. Mantilla then tested the substance contained in certain of the plastic bags and determined that

they contained cocaine. Mantilla subsequently weighed and tested the contents of 15 of the plastic bags and determined that the white rocky substance contained cocaine and weighed a total of 1.47 grams.

At the close of the State's case in chief, defendant moved for a directed verdict, based upon inconsistencies contained in the testimony of Officer Regalado and Officer Brown and because the State had failed to make a *prima facie* case on each material element of the charges against defendant. The trial court denied defendant's motion.

Defendant called Mary Davis to testify on his behalf. Ms. Davis stated that she lived with defendant and their baby at 105 North Menard in Chicago. Ms. Davis testified that she had observed police officers from her apartment window as they drove near the intersection of Menard and Washington. According to Ms. Davis, two officers got out of their car, entered the building, and came upstairs to her apartment. The door to the apartment was open, but the gate over the door opening was locked. The officers told her to unlock the gate, and she went into her bedroom to find the keys. While she was in the other room looking for the keys, the officers cut the lock off the bars and entered the apartment. When the police officers entered the apartment, defendant was holding the baby. The officers then directed defendant, Ms. Davis, and her two sisters to go into the front room and sit down. Thereafter, the officers began to search the apartment. The officers subsequently placed defendant under arrest for allegedly selling narcotics to police officers.

Ms. Davis testified further that she and the others were then instructed to go into the dining room while the officers continued to search the apartment for a total of 30 minutes. About five minutes after the first officers entered the apartment, three more male officers came into the apartment. Approximately 25 minutes later, a black female officer came up to the apartment by herself. Ms. Davis testified that she had overheard an earlier radio transmission from this female officer. According to Ms. Davis, the female officer said that she had found something in the back. Ms. Davis stated that the officers confiscated $45 from her, explaining that the bills had been marked. Ms. Davis testified that the police brought a black man, about 49 years old and handcuffed, into the apartment.

Ms. Davis stated that there were two apartments, number 105 and number 107, on the second floor of the building. Ms. Davis testified that she had lived in apartment 105, which was to the left of the top of the steps, for about two years. Ms. Davis reviewed and recognized two photographs of her door in which the gate was visible. Ms. Davis also viewed and recognized a photograph of a piece that was

used with the gate on her door. Finally, Ms. Davis viewed and recognized a photograph of apartments 105 and 107.

Ms. Davis testified that the kitchen window was in the rear of the apartment building. Behind the building was a gangway which was bordered by two buildings. Ms. Davis stated that she was with defendant for the 5 to 10 minutes that preceded the arrival of the police, and she never saw defendant throw anything out of the kitchen window before or after the police arrived.

Defendant also called Mr. Charles Smith, who testified that he was a casual acquaintance of defendant and had known him for about four years. Mr. Smith stated that at about 1 a.m. on September 7, 1990, he was walking to a store to buy milk. As he proceeded south on Menard, he heard a window open in the building at 107 North Menard. From across the street, Smith saw a man throw something to the ground from the front window. Smith testified that he was familiar with the location of the windows because he had previously been inside the apartment at 105 North Menard. Smith continued to walk south on Menard and crossed over to Washington Boulevard. He then crossed back over to Menard and stood on the southeast corner of Washington and Menard for a period of 20 to 40 minutes. As he stood on the corner, Smith observed some police officers come downstairs, exit the building, and search for something on the ground in front of the building. Smith also observed the officers escort a black man who had been handcuffed into the building through the entrance at 105 and 107 Menard. About 30 minutes later, the officers brought defendant, who was handcuffed, from the building and placed him into a police wagon.

Upon consideration of the evidence, the jury found defendant guilty of both counts of possession of a controlled substance with intent to deliver. The trial court sentenced defendant to a term of nine years. Defendant raises five issues on appeal.

# I

We initially consider defendant's assertion that he was deprived of his fourth amendment protection against unreasonable search and seizure. Defendant asserts that his rights were violated when the police detained him in his home and arrested him without probable cause.

The issue of whether probable cause exists is a common sense, practical question to be determined upon examination of the totality of the circumstances presented. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Probable cause exists if a police officer has knowledge of facts which would lead a reasonable

person to believe that a crime has been committed and that it was committed by the defendant. (*People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845.) An arrest cannot be made merely on the officer's suspicion that the individual may have committed the offense, but evidence sufficient to convict is not required. (*People v. Moody* (1983), 94 Ill. 2d 1, 7, 445 N.E.2d 275.) In determining whether an officer had probable cause to arrest, the officer's factual knowledge based upon previous law-enforcement experience may be sufficient. *People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147.

■ In the instant case, the evidence established that Officer Regalado had received several complaints that narcotics were being sold from the defendant's apartment building. Based upon his surveillance of the building and immediate vicinity, Regalado was aware that approximately 12 people entered the building within a 20-minute period shortly after midnight on September 7, 1990. Brown had informed Regalado that she had seen a black man with gray hair and without a shirt open a rear window and throw a plastic bag to the ground. Regalado was aware that inside the plastic bag were four foil packets, 36 smaller clear plastic bags containing a white rocky substance, and four small clear plastic bags which were empty. Regalado was also able to determine that defendant matched the description given by Officer Brown over the radio. Finally, defendant was not placed under arrest until Officer Brown positively identified him as the person she had seen throw the plastic bag from the second-floor window. These facts were sufficient to establish probable cause for the arrest of defendant.

Moreover, the detention of defendant by Regalado in the doorway of the apartment cannot be characterized as improper. The fourth amendment requires that any seizure be "reasonable," and the reasonableness of a seizure depends upon a balancing of the public's interest and the individual's right to personal security free from arbitrary interference by police officers. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327, 330.) In determining whether a stop is reasonable, an objective standard is used (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; *People v. Galvin* (1989), 127 Ill. 2d 153, 167, 535 N.E.2d 837, 843); namely, whether the facts available to the police officers warrant a person of reasonable caution to believe that the action taken was appropriate (*People v. Worlow* (1982), 106 Ill. App. 3d 112, 114, 435 N.E.2d 795, 797).

The testimony of Officer Regalado established that he detained defendant in the open doorway for a matter of a few minutes until

Officer Brown was able to come to the front of the building and up to the apartment. The evidence presented established that Regalado had knowledge of facts which would permit a person of reasonable caution to believe that the action taken was appropriate and the intrusion was justified. Consequently, we hold that defendant was not deprived of his fourth amendment protection against unreasonable search and seizure.

## II

We next review defendant's claim that he was deprived of his right to effective assistance of counsel. In support of this claim, defendant asserts that his attorney failed to file any motions to quash arrest or to suppress evidence or to raise any objection based upon the absence of probable cause for arrest; failed to adequately conduct a pretrial investigation; failed to properly cross-examine the State's witnesses and object where necessary; failed to argue that defendant could be found guilty of the lesser included offense to possession of a controlled substance and failed to object to jury instructions which did not include the lesser included offense; and failed to file an adequate post-trial motion.

The inadequacy of a defendant's trial counsel entitles him to a new trial only if his counsel was actually incompetent, as reflected in the actual performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1255-56.) A defendant is entitled to competent, not perfect, representation. (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 69, 461 N.E.2d 347, 359.) When incompetency of trial counsel is alleged, the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable legal assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Competency is determined from the totality of counsel's conduct at trial. (*Eddmonds*, 101 Ill. 2d at 69, 461 N.E.2d at 359; *People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685.) Errors in judgment or trial strategy do not establish incompetent representation by counsel (*Eddmonds*, 101 Ill. 2d at 70, 461 N.E.2d at 360), and courts ordinarily will not second-guess defense counsel's judgment and trial strategy (*People v. Hattery* (1985), 109 Ill. 2d 449, 460, 488 N.E.2d 513, 517, *cert. denied* (1986), 478 U.S. 1013, 92 L. Ed. 2d 727,

106 S. Ct. 3314). It is recognized that the independence of defense counsel is essential to a fair trial and that no two defense attorneys will necessarily agree on the same strategy for a particular case. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66; *Hattery*, 109 Ill. 2d at 460-61, 488 N.E.2d at 517.) Thus, a defendant must show that his counsel's performance fell below an objective standard of reasonableness (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064) and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068).

■ Defendant first argues that his trial counsel was incompetent by his failure to file any motions to quash arrest or to suppress evidence or to raise any objection based upon the absence of probable cause for arrest. The decision to file a motion to quash and to suppress evidence is clearly a matter of judgment and trial strategy and not normally subject to review. *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221; *People v. Atkins* (1987), 161 Ill. App. 3d 600, 515 N.E.2d 272.

Moreover, the record indicates that such a motion would likely have been denied where the evidence established that defendant had abandoned the plastic bag by throwing it out of the second-floor window to the ground below. Thus, defendant had relinquished any possessory right and corresponding right of privacy in the plastic bag. See *People v. Hoskins* (1984), 101 Ill. 2d 209, 220, 461 N.E.2d 941, *cert. denied* (1984), 469 U.S. 840, 83 L. Ed. 2d 81, 105 S. Ct. 142.

In addition, such a motion would not have been granted based upon a lack of probable cause to arrest. The evidence adduced by the State established that Officer Regalado had received several complaints that narcotics were being sold from the defendant's apartment building. Based upon his surveillance of the building and immediate vicinity, Regalado was aware that approximately 12 people entered the building within a 20-minute period shortly after midnight on September 7, 1990. Brown had informed Regalado that she had seen a black man with gray hair and without a shirt open a rear window and throw a plastic bag to the ground. Regalado was aware that inside the plastic bag were four foil packets, 36 smaller clear plastic bags containing a white rocky substance, and four small clear plastic bags which were empty. Regalado was also able to determine that defendant matched the description given by Officer Brown over the radio, and defendant was not placed under arrest until Officer Brown posi-

tively identified him as the person she had seen throw the plastic bag from the second-floor window.

■ Defendant also asserts that he was deprived of effective assistance of counsel where his attorney failed to adequately conduct a pretrial investigation or prepare for trial. This assertion is not supported by the record. Contrary to defendant's claim, defense counsel spoke with Ms. Davis about her testimony prior to trial and utilized certain photographs during his direct examination of this witness. Defense counsel decided not to continue with the use of the photographs, however, when Ms. Davis stated that she did not recognize the door in one of the pictures. Counsel also used certain photographs during his examination of Mr. Smith. The use of the photographs with these witnesses was intended to discredit the testimony of Officer Brown as to the location of the window from which the bag had been thrown. This tactic also supported defense counsel's theory that the officers had forcibly entered defendant's apartment and conducted an illegal search for contraband. Moreover, the decision of when to use photographs at trial is a matter of trial strategy and should not be questioned by this court. See *People v. Davis* (1992), 228 Ill. App. 3d 123, 592 N.E.2d 464.

■ Defendant next argues that his attorney was incompetent in failing to properly cross-examine Mr. Mantilla, the forensic chemist called by the State. The decision to cross-examine a witness is a matter of trial strategy and not subject to review. (*People v. Watts* (1985), 139 Ill. App. 3d 837, 847, 487 N.E.2d 1077.) It was undisputed that the forensic chemist weighed and tested several of the packets recovered from the area behind defendant's apartment building and conclusively determined that defendant possessed at least 1.47 grams of cocaine and a minimum of 1.1 grams of PCP. Cross-examination of Mantilla as to the amount of controlled substances recovered by Officer Brown would have been inconsistent with defense counsel's theory that defendant was not the person who had tossed the plastic bag from the second-floor window.

■ Defendant also asserts that his counsel failed to object to unsupported closing argument by the prosecutor, failed to argue that defendant could be found guilty of the lesser included offense of possession of a controlled substance, and failed to object to jury instructions which did not refer to the lesser included offense. The decision of what theory of defense to present to the jury is undeniably a matter of trial strategy, as is the decision of whether to tender certain jury instructions (*People v. Kubat* (1983), 94 Ill. 2d 437, 485-86, 447 N.E.2d 247). In the instant case, defense counsel's argument that

defendant could be found guilty of possession of a controlled substance would have been inconsistent with the defense that defendant had been erroneously identified as the offender and that the police had forcibly entered the wrong apartment. The assertion that defendant could have been found guilty of the lesser included offense of possession would have undermined the theory of defense presented at trial. Consequently, it cannot be said that counsel was incompetent for opting not to argue and submit jury instructions on the lesser included offense.

■■ Finally, defendant claims that his counsel was incompetent in failing to file an adequate post-trial motion. The record indicates, however, that the motion for a new trial focused on the inconsistencies and discrepancies in the testimony of Officers Regalado and Brown. Thus, the motion addressed the issues which were most likely to be successful in persuading the trial judge to grant defendant a new trial. In light of the evidence adduced at trial, it cannot be said that defense counsel was actually incompetent by raising these issues in the post-trial motion.

In summary, the record indicates that defense counsel raised numerous objections during trial and that many of these objections were sustained. In addition, he carefully cross-examined Officers Regalado and Brown, the State's most critical witnesses. Defendant's attorney fully explored the inconsistencies and discrepancies in the testimony of these witnesses and zealously represented the interests of the defendant by pursuing the defense of mistake in identity. Thus, we hold that defendant is not entitled to a new trial based upon the incompetency of his trial counsel.

### III

We next address defendant's argument that the State presented insufficient evidence to prove him guilty beyond a reasonable doubt.

A court of review must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

Defendant contends that the State failed to present sufficient evidence to prove that he had knowledge of the controlled substances and that they were in his immediate and exclusive control.

The testimony of a single law enforcement officer is sufficient to support a conviction in a narcotics case. (*People v. Garcia* (1981), 100

Ill. App. 3d 302, 304, 426 N.E.2d 1116, 1117-18; *People v. Grayson* (1980), 89 Ill. App. 3d 766, 772, 411 N.E.2d 1177, 1181.) Minor inconsistencies in testimony do not constitute grounds for reversal of a criminal conviction (*People v. Scott* (1987), 152 Ill. App. 3d 868, 872, 505 N.E.2d 42, 45; *People v. Daniels* (1984), 129 Ill. App. 3d 894, 900, 473 N.E.2d 517, 522; *People v. Wright* (1972), 3 Ill. App. 3d 829, 833, 279 N.E.2d 398, 401), and the effect of testimonial discrepancies upon the credibility of the witnesses is a matter for the jury to determine (*People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421). It is within the province of the trier of fact to determine the credibility and weight of the testimony, to resolve the inconsistencies and conflicts therein, and to render its decision accordingly. (*Furby*, 138 Ill. 2d at 455.) Where the evidence is conflicting, it is the prerogative of the trier of fact to ascertain the truth. (*Furby*, 138 Ill. 2d at 456.) When a defendant offers an explanation of his conduct, the plausibility of that story is to be determined by the trier of fact, and the jury is entitled to disbelieve the explanation offered. *People v. Kline* (1976), 41 Ill. App. 3d 261, 267, 354 N.E.2d 46.

Officer Brown testified that she observed a man open the rear second-floor window and toss the plastic bag onto the ground. She stated that the rear of the building was illuminated by lights as was the apartment from which the bag was thrown. According to Brown, she had a clear and unobstructed view of the man who tossed the bag from the window. Brown also testified unequivocally that defendant was that person. Brown identified defendant at the scene and in court. Considering this evidence in the light most favorable to the prosecution, the jury could reasonably have concluded that defendant had possession of the controlled substances which were recovered from the ground behind the apartment building.

Defendant also asserts that the State failed to present sufficient evidence that he possessed the controlled substances with the intent to deliver.

It has been held that a reasonable inference of intent to deliver is permitted when the amount of the controlled substance possessed could not be viewed as designed for personal consumption. (*People v. Rouser* (1990), 199 Ill. App. 3d 1062, 1065, 557 N.E.2d 928; *People v. Friend* (1988), 177 Ill. App. 3d 1002, 1021, 533 N.E.2d 409.) Evidence that the defendant possessed a weapon, a combination of drugs, and large amounts of cash also provides support for the inference that the defendant intended to sell the controlled substances rather than to keep them for his own use. (*Rouser*, 199 Ill. App. 3d at 1065; *Friend*, 177 Ill. App. 3d at 1021.) Under the facts presented in the instant

case, the mere circumstance that the controlled substance has been divided into individual packets, without more, is insufficient to establish the intent to deliver beyond a reasonable doubt. *People v. McLemore* (1990), 203 Ill. App. 3d 1052, 1056, 561 N.E.2d 465; *People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 436, 559 N.E.2d 1051.

■ In the instant case, the forensic chemist who examined the substances recovered by Officer Brown conclusively weighed and tested only 1.47 grams of cocaine and 1.1 grams of PCP. Although the cocaine was divided into 36 small plastic bags and the PCP was divided into four foil packets, there was no evidence that the defendant had placed these substances into the individual packets. There was no evidence that defendant possessed a weapon, a scale or other drug paraphernalia, or large amounts of cash. The record does not reflect any evidence of what amounts of cocaine or PCP might be considered for personal use. (See *McLemore*, 203 Ill. App. 3d at 1057.) In addition, Officer Regalado's conclusion that there was "heavy traffic" in the apartment building at 1 a.m. on September 7, 1990, was predicated upon the fact that he saw 12 people enter the building within a 20-minute period. There was no evidence of how long each person remained in the building or of how many people left the building in the 20-minute time span. None of the officers present at the scene actually observed defendant engaged in a drug transaction. See *Crenshaw*, 202 Ill. App. 3d at 436.

Because the sole evidence of intent to deliver consisted of the fact that the controlled substances were divided into individual packets, we conclude that there was reasonable doubt that defendant was guilty of possession of a controlled substance with intent to deliver. Accordingly, we reverse the conviction for possession with intent to deliver, and pursuant to our authority under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), we reduce the degree of the offenses, enter judgment for the lesser offenses of possession of a controlled substance, and remand the cause for a new sentencing hearing on the convictions for possession of controlled substances.

## IV

We next address defendant's assertion that the trial court erred in denying his motion for a directed verdict at the close of the State's case in chief.

On a motion for a directed verdict, the trial court must consider whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in the light most favorable to the prosecution. (*People v. Withers* (1981), 87 Ill. 2d

224, 230, 429 N.E.2d 853.) In the case at bar, the State was required to prove that the defendant had knowledge of the presence of the controlled substance, that the narcotics were in the immediate control or possession of the defendant, and that he had the intent to deliver or the amount of narcotics was in excess of any amount which might be viewed as merely possessed for personal use. *People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 576 N.E.2d 1030.

■ The evidence presented conclusively established only that the bag thrown by defendant from the second-floor window contained 1.47 grams of cocaine, divided into 36 small plastic bags, and 1.1 grams of PCP, divided into four foil packets. There was no evidence that the amount of the controlled substances could not be considered for personal use. There was no testimony that defendant had sold or delivered any narcotics, and there was no evidence that defendant possessed a weapon or large amounts of cash. On this record, the trial court should have granted defendant's motion for a directed verdict as to the charge of possession with intent to deliver and continued the trial on the lesser included offense of possession of a controlled substance. Consequently, we hold that the trial court erred in denying defendant's motion for a directed verdict at the close of the State's case.

## V

■ Finally, defendant asserts that the sentence imposed by the trial court was excessive. Because we have held that defendant is entitled to a new sentencing hearing on the offense of possession of a controlled substance, we need not address this assertion.

For the foregoing reasons, the defendant's convictions are reduced to possession of a controlled substance, the sentence imposed by the trial court is vacated, and the cause is remanded for sentencing for possession of a controlled substance.

Reversed, reduced, and remanded.

McNAMARA, P.J., and RAKOWSKI, J., concur.