(No. 76572.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. THOMAS ROBINSON, Appellee and Cross-Appellant.

*Opinion filed October 26, 1995.*

HEIPLE, J., joined by BILANDIC, C.J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Renee G. Goldfarb, Janet Powers Doyle, Katherine S.W. Schweit and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, of the Office of the State Appellate Defender, of Chicago (Andrey B. Filipowicz, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

The defendant, Thomas Robinson, was charged with two counts of possession of a controlled substance with intent to deliver under section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1401). A jury convicted the defendant on both counts, and the defendant was sentenced to nine years' imprisonment. The appellate court vacated defendant's convictions of possession of a controlled substance with intent to deliver, reduced defendant's conviction to possession of a controlled substance and remanded the cause for resentencing. (252 Ill. App. 3d 1023.) We granted the State's petition for leave to appeal (145 Ill. 2d R. 315). The defendant cross-appeals.

Two issues are presented for review in this appeal: whether the police officers had probable cause to arrest the defendant; and whether the State presented sufficient circumstantial evidence to support defendant's conviction of possession of a controlled substance with intent to deliver.

Evidence presented at trial indicated the following. Officer Larry Regalado testified that he was working as an undercover officer with a tactical team of the Chicago police department on the morning of September 7, 1990. Officer Regalado testified that at approximately 12:20 a.m. he went to an apartment building at 107 North Menard with his partner, Officer Barnes, in response to complaints that narcotics were being sold from the second floor of the building. The officers conducted surveillance of the building from one block away. The officers observed approximately 12 persons enter and exit the building over a 20-minute period of time.

Officer Regalado testified that because the officers observed "a lot of [pedestrian] traffic," they decided to approach the building and called for the assistance of additional officers, who arrived within minutes. Officer Brown went to the rear of the building and Officers Regalado and Barnes entered the front door of the building, maintaining radio contact with Officer Brown at all times. Officers Regalado and Barnes went to apartment 107, one of the two apartments on the second floor of the building. Officer Regalado knocked on the door and announced that they were police officers. The officers heard scuffling in the apartment which sounded like "people running in the apartment." Approximately one minute later, the officers received a radio transmission in which Officer Brown stated that she had observed a male wearing no shirt open a rear window and toss a plastic bag out of the window. Officer Regalado testified that approximately 20 or 30 seconds after Officer Brown's transmission, the defendant opened the apartment door wearing no shirt. Regalado also observed two females and some children in the apartment.

Officer Regalado testified that defendant stood in the apartment doorway while he questioned defendant and informed him of the complaints that drugs were being sold at 107 North Menard. The defendant told the officers that he did not live in the apartment. Officer Brown, who had been stationed outside at the rear of the building, came up to apartment 107. When Officer Brown arrived at apartment 107, she identified the defendant as the man who threw the plastic bag out the window and showed the bag to Officer Regalado. The officers then arrested the defendant. The items recovered from the plastic bag were inventoried and Officer Brown sealed them in an evidence bag.

On cross-examination Officer Regalado testified that the complaints he had received of drug transactions

consisted of two or three phone calls from anonymous persons. He testified that although he signed the arrest report, he did not read it, and that he wrote the case report. He further testified that the case report did not describe the surveillance of 107 North Menard or the officers' observations during the surveillance.

Officer Brown testified that she had worked for the tactical unit in narcotics investigations for approximately eight years, and that she had observed the building at 107 North Menard one or two days before the defendant's arrest, investigating complaints that narcotics were being sold at that address. She said that she had viewed the front, rear and side of the building and knew which windows were at the rear of the apartment building. Officer Brown testified that she and Sergeant Schweiger were called to 107 North Menard on September 7, 1990, by Officers Regalado and Barnes.

Officer Brown testified that she went to the rear of the apartment building. When she reached the rear of the building, she received a radio transmission from Officer Regalado, who asked her if she was in position. Officer Brown replied that she was at the rear of the building. Officer Regalado informed her that he and Officer Barnes were going to knock at the front door. She stated that there was a light in the apartment and lights at the back of the building. Officer Brown testified that she observed a man, whom she identified as the defendant, come to a rear window of the apartment building, open the window and toss a packet out of the window onto the ground. She stated that the packet contained some tinfoil packets and many small clear plastic bags which contained a white powdery substance.

Officer Brown testified that she used her radio to tell the officers at the front of the building that she had seen a man with gray hair and wearing no shirt toss the packet out of the window. She retrieved the bag and

described the packet to the officers. The officers told Officer Brown to come to the front of the upstairs apartment. Officer Brown then carried the bag she had seen defendant throw from the window around the building to an upstairs apartment where Officers Regalado and Barnes were standing in the doorway with a man. She told Officer Regalado that the man standing in the doorway was the man who dropped the packet out of the rear window. She testified that the packet was inventoried, sealed in an inventory bag and sent to the crime lab.

Jose Mantilla, an expert witness for the State, testified that he was employed as a forensic chemist by the Chicago police department. He testified that he opened the sealed inventory bag and found four tinfoil packets containing crushed green plants, 36 plastic bags containing a white rocky substance and four empty plastic bags. Mantilla testified that he first weighed two of the tinfoil packets and that their combined weight was 1.1 grams. He next conducted both a preliminary analysis and a confirmatory analysis on the crushed green plant. The substance tested positive for the presence of phencyclidine (PCP). He estimated that the combined weight of the substance in all four tinfoil packets was 2.2 grams.

Mantilla testified that he then weighed the white substance in three of the plastic bags which had a combined weight of 0.23 grams, and that he estimated the weight of all 36 bags at 2.8 grams. He then conducted two preliminary analyses on three of the bags and a confirmatory analysis on one of the three bags. All three tests indicated that the white rocky substance contained cocaine. Mantilla then performed additional tests on the substance in 15 of the bags. The 15 bags contained a combined 1.47 grams of the white rocky substance and tested positive for the presence of cocaine.

At the close of the State's evidence, the defendant

moved for a directed verdict. The court denied defendant's motion.

The jury returned a verdict of guilty against the defendant on both counts of possession of a controlled substance with intent to deliver. The trial court sentenced the defendant to nine years' imprisonment. On appeal the appellate court reduced the defendant's convictions to possession of a controlled substance.

The appellate court found that the State failed to prove the element of intent to deliver the narcotics beyond a reasonable doubt, and held that the trial court erred in denying the defendant's motion for a directed verdict as to possession with intent to deliver. The State now appeals these rulings. The defendant cross-appeals contending that the appellate court erroneously ruled that there was probable cause to arrest the defendant.

## Probable Cause

The defendant failed to make any objection or move to quash his arrest based on a lack of probable cause at the trial court level. When a party fails to raise issues at the trial level, through both an objection at trial and a post-trial motion, such issues are waived for purposes of appeal. (*People v. Coleman* (1994), 158 Ill. 2d 319, 333; *People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Thus, defendant has waived the contention that his arrest violated his fourth amendment right against unreasonable searches and seizures. However, on appeal, defendant claimed that his trial counsel was ineffective for failure to file a motion to quash his arrest based on a lack of probable cause. Since the appellate court ruled on this argument, we briefly address, in the context of the claim that defendant was denied effective assistance of counsel, the appellate court's conclusion that the officers had probable cause to arrest defendant.

Defendant must meet both prongs of the *Strickland* test to be successful in a claim of ineffective assistance

of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The *Strickland* test requires that the defendant show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance resulted in prejudice to defendant. If the defendant fails to satisfy either prong, his claim of ineffective assistance of counsel must fail. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) Because we agree with the appellate court that there is no reasonable likelihood that a motion to quash defendant's arrest would have been granted based on a lack of probable cause, defendant has failed the prejudice prong of the *Strickland* test.

A warrantless arrest will be deemed lawful only when probable cause to arrest has been proven. (*People v. Tisler* (1984), 103 Ill. 2d 226, 237.) Probable cause to arrest exists when facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant was the person who committed the crime. (*People v. Foster* (1987), 119 Ill. 2d 69, 83.) Courts, guided by common sense and practical considerations, must determine whether probable cause existed based on the facts known to the officers at the time the arrest was made. *Tisler*, 103 Ill. 2d at 236-37.

Prior to the defendant's arrest in the doorway of apartment 107, Officer Brown had seen a man wearing no shirt throw a plastic bag out the rear window of apartment 107. The plastic bag held many smaller plastic bags that contained a white substance as well as several tinfoil packets. Officer Brown described what she had observed by radio to her partners who were at the front door of apartment 107. When she walked around to the front of the building, Officer Brown identified the defendant, who was standing in the doorway of

apartment 107 wearing no shirt, as the man who had thrown the plastic bag out the back window. The facts known to the officers in this case would lead a reasonable person to believe that a crime had been committed and the defendant was the person who committed the crime. Thus, the officers had probable cause to arrest the defendant for drug-related offenses.

The defendant argues that the officers unlawfully detained him in the doorway of apartment 107. He contends that when the officers questioned him in the doorway of apartment 107 they seized him in violation of the fourth amendment. A seizure does not occur unless the police officer uses physical force or the authority of his office to restrict a citizen's liberty to walk away or discontinue the conversation. (*Florida v. Bostic* (1991), 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386.) A seizure "does not occur simply because a police officer approaches an individual and asks a few questions" (*Bostic*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386) but takes place only when a reasonable person would not feel free to disregard the police and walk away from the conversation (*Michigan v. Chesternut* (1988), 486 U.S. 567, 573, 100 L. Ed. 2d 565, 572, 108 S. Ct. 1975, 1979; *Terry v. Ohio* (1968), 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877).

When the defendant opened the door to apartment 107, Officers Regalado and Barnes simply identified themselves as officers, informed the defendant that there had been complaints that drugs were being sold at the apartment, and asked the defendant basic questions such as who lived in the apartment and whether the defendant lived there, which the defendant willingly answered. The defendant was only briefly detained. Thus, we agree with the appellate court's conclusion that the officers did not unreasonably detain the defendant by standing in the hallway asking him questions.

Defendant also contends that his arrest in the doorway of apartment 107, absent exigent circumstances, violated the fourth amendment. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *cf. United States v. Santana* (1976), 427 U.S. 38, 42, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2409.) We decline to address this issue since defendant failed to raise it in the trial court or in his claim of ineffective assistance of counsel on appeal.

## Intent to Deliver

Turning to the issue of whether the appellate court properly ruled that the circumstantial evidence in the case at bar was insufficient, as a matter of law, to prove that the defendant intended to deliver the narcotics, the State argues that the Illinois Controlled Substances Act permits an inference of intent to deliver when *any* amount of controlled substance is in the defendant's possession. The three elements of the crime of unlawful possession of narcotics with intent to deliver are: the defendant had knowledge of the presence of the narcotics, the narcotics were in the immediate possession or control of the defendant, and that the defendant intended to deliver the narcotics. (720 ILCS 570/401 (West 1992); *People v. Pintos* (1989), 133 Ill. 2d 286, 291-92.) The first two elements were established at trial and are not the subject of dispute in this appeal. We only address the propriety of the appellate court's ruling with regard to the third element, *i.e.*, whether the State proved that the defendant intended to deliver the narcotics beyond a reasonable doubt.

The issue to be resolved in this appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant intended to deliver the packets of narcotics in his possession. (See *People v. Young* (1989), 128 Ill. 2d 1, 49;

*People v. Collins* (1985), 106 Ill. 2d 237, 261.) Because direct evidence of intent to deliver is rare, such intent must usually be proven by circumstantial evidence. (See *People v. Friend* (1988), 177 Ill. App. 3d 1002, 1021.) Consequently, this issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver. In controlled substance prosecutions, many different factors have been considered by Illinois courts as probative of intent to deliver. Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption (*People v. Berry* (1990), 198 Ill. App. 3d 24), the high purity of the drug confiscated (*People v. Torres* (1990), 200 Ill. App. 3d 253), the possession of weapons (*People v. Dockery* (1993), 248 Ill. App. 3d 59), the possession of large amounts of cash (*People v. Jones* (1991), 215 Ill. App. 3d 652), the possession of police scanners, beepers or cellular telephones (*People v. LeCour* (1988), 172 Ill. App. 3d 878; *People v. Bradford* (1993), 239 Ill. App. 3d 796), the possession of drug paraphernalia (*People v. McDonald* (1992), 227 Ill. App. 3d 92) and the manner in which the substance is packaged (*People v. Banks* (1992), 227 Ill. App. 3d 950). The Illinois legislature has clearly expressed its intent to punish "the illicit traffickers or profiteers *** who propagate and perpetuate the abuse of such substances" more severely than those individuals who possess narcotics for personal use. 720 ILCS 570/100 (West 1992).

The appellate court concluded that the amount of drugs recovered in this case was insufficient to support an inference that the drugs could not have been intended for personal consumption. The fact that the drugs were packaged in 40 individual packets, without more, was held insufficient to establish intent to deliver beyond a reasonable doubt. (252 Ill. App. 3d at 1036-37.) In this

appeal, the State argues that the amount of drugs in the defendant's possession and the way in which the drugs were packaged is sufficient circumstantial evidence to support a conviction for possession with intent to deliver.

The defendant contends, and the appellate court agreed, that only the amounts of the controlled substances that were actually weighed and tested by the forensic chemist should be considered in determining whether the defendant had the requisite intent to deliver. Assuming that defendant's argument is well taken, only 1.47 grams of cocaine and 1.1 grams of PCP should be considered. However, the rule of law argued by the defendant on this issue is inapplicable.

Generally, a chemist may render an expert opinion with respect to contents of the entire amount of substance seized, even though the opinion is based on testing of only random samples of the substance. (See *People v. Hill* (1988), 169 Ill. App. 3d 901, 912; see also *People v. Ayala* (1981), 96 Ill. App. 3d 880, 882; *People v. Games* (1981), 94 Ill. App. 3d 130, 131.) This rule is one of reason and practicality. (*People v. Kaludis* (1986), 146 Ill. App. 3d 888, 894; *Games*, 94 Ill. App. 3d at 131.) However, Illinois courts have held that where the defendant could be charged with the lesser included offense of possession of a smaller amount, the weight of the drug is an essential element of the crime and must be proved beyond a reasonable doubt. (*Hill*, 169 Ill. App. 3d at 911.) In such cases, a sample from each separate bag or container must be tested to prove that it contains a controlled substance.

The case at bar does not pose the "lesser included offense" exception to the general rule that a chemist need test only random samples of a substance to be qualified to render an opinion as to the entire amount seized. The defendant was charged with and convicted of possession

with intent to deliver one gram or more but less than 15 grams of cocaine pursuant to section 401(c)(2), and "any other amount" of PCP pursuant to section 401(e) of the Controlled Substances Act. The chemist who testified for the State in this case weighed and tested more than one gram of both substances.

Defendant argues that if the amount of a controlled substance is a factor to be considered in determining the existence of intent to deliver the substance, and separate bags or containers are seized, a sample from each bag or container must be conclusively tested to be considered by the fact finder. However, the quantity of the controlled substance possessed in excess of the statutory minimum quantity for the crime charged is not an element of the crime to be proven beyond a reasonable doubt, but is only one of many factors to be taken into account in considering the element of intent to deliver. Thus, the existence of the 21 untested packets that were found in the same bag as the 15 packets that tested positive for cocaine, and were similar in size and appearance, could be viewed as probative of intent to deliver and were properly admitted into evidence. Also, upon being asked if he wished to cross-examine the State's expert witness, defense counsel replied, "No judge *** we are not contesting that the substance is cocaine." The two untested tinfoil packets were also properly admitted into evidence as proof of intent to deliver. (See *People v. Bradford* (1993), 239 Ill. App. 3d 796, 799-800.) The fact that only a portion of the packets was tested and determined to contain controlled substances affects only the weight to be given the evidence rather than its admissibility. See *Kaludis*, 146 Ill. App. 3d at 894.

Concerning the issue of the amount of circumstantial evidence necessary to prove intent to deliver, we initially note that the quantity of controlled substance alone can be sufficient evidence to prove an intent to

deliver beyond a reasonable doubt. However, such is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption. (See *People v. Romero* (1989), 189 Ill. App. 3d 749; see also *People v. Munoz* (1982), 103 Ill. App. 3d 1080 (250.1 grams of cocaine but no other contraband recovered).) To determine whether the circumstantial evidence in the case at bar was sufficient to establish intent to deliver narcotics beyond a reasonable doubt, we look to the statute.

The defendant in the case at bar was charged with violating section 401(c)(2) of the Controlled Substances Act, which makes it a Class 1 felony to possess with intent to deliver "1 gram or more but less than 15 grams of any substance containing cocaine." (720 ILCS 570/ 401(c)(2) (West 1992).) Section 401(e) of the Act states that "[a]ny person who violates [section 401] with regard to any other amount of a controlled or counterfeit substance *** is guilty of a Class 3 felony." (720 ILCS 570/401(e) (West 1992).) The above sections of the Act indicate that the Illinois legislature did not preclude prosecutions for possession with intent to deliver amounts of narcotics that could be viewed as being possessed solely for personal use. However, when the amount of substance seized is an amount that may be considered consistent with personal use, our courts have properly required additional evidence of intent to deliver to support a conviction. See *Bradford*, 239 Ill. App. 3d 796 (1.3 grams of crack cocaine, cellular phone, police scanner, plastic baggies and defendant's knowledge of local drug trafficking); *People v. LeCour* (1988), 172 Ill. App. 3d 878 (3.3 grams of cocaine, pager and testimony that defendant had sold cocaine to undercover officers the day before his arrest).

There are numerous circumstances from which a jury might infer an intent to deliver. (See *People v.*

*Greenleaf* (1993), 254 Ill. App. 3d 585 (4.36 grams of cocaine and purchase of cocaine by undercover officer from codefendant at apartment where defendant was arrested); *People v. Banks* (1992), 227 Ill. App. 3d 950 (69 plastic packets containing heroin, nine plastic packets containing cocaine and $300 cash); *People v. Jones* (1991), 215 Ill. App. 3d 652 (49 packets containing cocaine and $1,000 cash); *People v. Williams* (1990), 200 Ill. App. 3d 503 (102 packets of cocaine and triple-beam scale); *People v. Friend* (1988), 177 Ill. App. 3d 1002 (69.5 grams of cocaine, 333.2 grams of cannabis, scale, cash and two guns); *People v. Schaefer* (1985), 133 Ill. App. 3d 697 (21.9 grams of cocaine and 578.8 grams of cannabis in various containers, marijuana pipes, vials, ether, a scale and six guns); *People v. Hunter* (1984), 124 Ill. App. 3d 516 (350 pills in trunk of defendant's car and scattered on front seat, police officers' observation of exchange between defendant and several persons approaching defendant's car); *cf, People v. Thomas* (1994), 261 Ill. App. 3d 366 (loaded shotgun and testimony of police that defendant was filling small packets from a pile of white powder insufficient circumstantial evidence of intent to deliver 5.5 grams of cocaine in 27 packets); *People v. McLemore* (1990), 203 Ill. App. 3d 1052 (four or five $100 bills insufficient circumstantial evidence of intent to deliver 3.3 grams of cocaine divided into 15 packages); *People v. Crenshaw* (1990), 202 Ill. App. 3d 432 (loaded weapon insufficient circumstantial evidence of intent to deliver 11.2 grams of cocaine divided into 22 packages); *People v. Rouser* (1990), 199 Ill. App. 3d 1062 (large amount of cash, small amount of cannabis and presence of paraphernalia insufficient circumstantial evidence of intent to deliver 0.3 grams of cocaine).) We note that in each of the cases cited above, there was greater circumstantial evidence of intent to deliver than in the present case. The question of whether the evi-

dence is sufficient to prove intent to deliver must be determined on a case-by-case basis. (*Berry*, 198 Ill. App. 3d at 28.) As the quantity of controlled substance in the defendant's possession decreases, the need for additional circumstantial evidence of intent to deliver to support a conviction increases.

We note, as did the appellate court, that there is no evidence in the record, such as expert testimony, that the amount of cocaine and PCP in the defendant's possession was more than would reasonably be used for personal consumption. Further, the State does not contend that the quantity of the controlled substances in this case is greater than could reasonably be viewed as being possessed for personal use. After a review of the numerous cases in this area, we determine that possession of 2.2 grams of PCP and 2.8 grams of cocaine, standing alone, could reasonably be viewed as being for personal consumption. See *McLemore*, 203 Ill. App. 3d at 1056 (3.3 grams of cocaine not greater than would be used for personal consumption).

The record reveals that the cocaine recovered in this case was contained in 36 individual packets and the PCP was contained in four packets along with four empty plastic bags. Officer Regalado testified that the police had received several anonymous phone calls complaining of drug sales at the apartment building at 107 North Menard. Officer Regalado also testified that approximately a dozen people came "in and out of the doorway at 107 North Menard" over a 20-minute time period.

It is the function of the jury to determine the credibility of the witnesses and draw reasonable inferences from the evidence. (*Young*, 128 Ill. 2d at 51.) We cannot say that the evidence of intent to deliver the controlled substances in the case at bar was "so *** unsatisfactory that it create[d] a reasonable doubt" as to the defen-

dant's intent to deliver. (*Collins*, 106 Ill. 2d at 261.) Viewing this evidence in the light most favorable to the State, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant intended to deliver the narcotics in his possession.

We note that, generally, when a defendant is charged with possession of a controlled substance, *in appropriate circumstances*, packaging alone might be sufficient evidence of intent to deliver. Considering the fashion in which the controlled substances possessed by the defendant were packaged, the anonymous tips, and amount of late-night traffic at 107 North Menard, the appellate court erroneously reversed the defendant's conviction for possession with intent to deliver. Forty individual parcels, containing two different types of narcotics, and the other circumstantial evidence in this case were sufficient to support the jury's verdict.

We note appellate court decisions in which convictions for possession of small amounts of controlled substances with intent to deliver were supported by circumstantial evidence. (*Bradford*, 239 Ill. App. 3d at 800 (1.3 grams of cocaine divided into 8 to 10 baggies, defendant's knowledge of drug trafficking, a cellular telephone and a programmable scanner); *Berry*, 198 Ill. App. 3d at 26 (3.9 grams of cocaine, 2.5 grams of cannabis and over $3,100 in cash); *LeCour*, 172 Ill. App. 3d at 882, 886 (3.3 grams of cocaine, testimony that informant had purchased cocaine from the defendant one day before the defendant's arrest and defendant was arrested at the location where the purchase of 3.3 grams of cocaine was to take place).) The above cases are consistent with our holding in the present case. In light of the numerous types of controlled substances and the infinite number of potential factual scenarios in these cases, there is no hard and fast rule to be applied in every case. Our appellate court has established

rational guidelines and general parameters in its consideration of the circumstantial evidence necessary to prove intent to deliver controlled substances. However, the appellate court improperly reversed the jury's inference of intent to deliver in the case at bar.

Viewing the evidence in the light most favorable to the State, the evidence in the case at bar was sufficient to support an inference of intent to deliver beyond a reasonable doubt. Therefore we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HEIPLE, dissenting:

In reinstating the defendant's convictions for possession of a controlled substance with intent to deliver, the majority relies upon unreasonable inferences from the evidence. Accordingly, I dissent.

The evidence against the instant defendant considered in the light most favorable to the prosecution is easily summarized. The police received anonymous tips that an unidentified person was selling drugs in defendant's multiunit apartment building. On the night defendant was arrested, the police observed 12 persons enter and exit the multiunit building during a 20-minute period. The police then decided to go door to door in the building seeking information about drug dealing. When the police knocked on defendant's door, defendant threw a plastic bag from his back window containing 40 small packets, 36 of which contained a total of 2.8 grams of a cocaine-like substance and four of which contained a total of 2.2 grams of PCP-laced, crushed green leaves.

In support of its conclusion that this evidence proved intent to deliver beyond a reasonable doubt, the majority compares the instant case to three appellate opinions

wherein the circumstantial evidence was deemed sufficient to show intent to deliver. (167 Ill. 2d at 407-08.) All three opinions, however, are readily distinguishable in that there was evidence other than the possession of drugs from which a jury could reasonably infer intent to deliver. *People v. Bradford* (1993), 239 Ill. App. 3d 796, 800 (defendant exhibited knowledge of the drug trade and possessed both a cellular phone and programmable scanner set to the frequency used by the local police department); *People v. Berry* (1990), 198 Ill. App. 3d 24, 26 (defendant possessed over $3,100 in cash in different locations on his person); *People v. LeCour* (1988), 172 Ill. App. 3d 878, 882, 886 (defendant arrested while selling the drugs to undercover police).

Unlike *Bradford, Berry* and *LeCour*, there was no evidence against the defendant suggesting intent to deliver: no weapons; no scale; no police scanner; no cellular phone; no beeper; no drug paraphernalia; and no unusual amounts of cash. The majority makes much of the anonymous tip regarding an unidentified drug dealer and the unusually high rate of pedestrian traffic in and out of defendant's multiunit apartment building. Neither the tip nor the traffic, however, was ever connected to the defendant and thus cannot reasonably constitute circumstantial evidence of defendant's intent to deliver. Similarly, the majority should not have inferred intent to deliver from the manner in which the drugs were packaged. The total quantity of drugs found was consistent with personal consumption and it is thus equally likely that they were packaged that way when defendant obtained them for his personal use. (See *People v. McLemore* (1990), 203 Ill. App. 3d 1052, 1056 (3.3 grams of cocaine not greater than would be used for personal consumption).) Would a carton of cigarettes or a case of whiskey indicate the owner was a seller of cigarettes or whiskey?

Rather than draw unreasonable inferences from the evidence, the majority should have concluded that because the quantity of drugs found here is not inconsistent with personal consumption, the manner of packaging alone, without any other evidence of drug dealing, is insufficient to prove intent to deliver beyond a reasonable doubt. Such a ruling would effectively balance the liberty interests of defendants, who face much stiffer sentences for intent to deliver as contrasted with mere possession convictions, with the State's goal of curtailing the drug trade. Applying this standard to this case would result in an affirmance only of defendant's conviction for possession of a controlled substance.

The application of the laws should be uniform regardless of the category of the offense. Unfortunately, the current obsession with the drug trade is warping our jurisprudence in the direction of a police state. I dissent.

CHIEF JUSTICE BILANDIC joins in this dissent.