**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190575-U

Order filed February 24, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Twenty-First Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0575 Circuit No. 18-CF-587 |
| LATRELL T. FRANKLIN, | ) ) ) | The Honorable Clark Erickson, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court.
JUSTICE HAUPTMAN concurred in the judgment.
JUSTICE HOLDRIDGE specially concurred in part and dissented in part.

**ORDER**

¶ 1     *Held*:  (1) The State's evidence presented at trial was insufficient to sustain defendant's conviction for unlawful possession of a controlled substance with intent to deliver; and (2) the trial court abused its discretion in allowing trial testimony and discussion on evidence seized during the execution of the search warrant but which the State has failed to connect to defendant.

¶ 2     Defendant Latrell T. Franklin appeals his conviction for unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(7.5) (ii)) and armed violence (720 ILCS 5/33A-2) following a jury trial. He challenges the sufficiency of the evidence to

sustain his conviction on both counts and the admissibility of trial testimony on certain items collected during his arrest. He also requests that we vacate his conviction for unlawful possession of a controlled substance under the one-act, one-crime doctrine. For the reasons that follow, we reverse both of his convictions and remand for further proceedings on the single charge of armed violence.

¶ 3                                        FACTS

In October 2018, the State charged Franklin with (1) Armed Violence, (2) Unlawful Possession of a Controlled Substance with Intent to Deliver, and (3) Unlawful Possession of Cannabis with the Intent to Deliver. In Count I, the State alleged that Franklin was armed with a gun while in "possession with intent to deliver" of MDMA pills. In July 2019, the State proceeded to trial on the first two counts and chose not to prosecute Count III. The State presented six witnesses: Deputy Director Kidwell; Special Agent Jason Burse; Barbara Wilkins, a forensic scientist with the Illinois State Police Joliet Forensic Science Laboratory; Cynthia Koulis, a forensic scientist with the Illinois State Police; Special Agent Michael Coash; and Officer David Herberger. Franklin testified on his own behalf, as the only witness for his defense. The trial testimony was as follows.

¶ 4             On September 29, 2018, the Kankakee Area Metropolitan Enforcement Group ("KAMEG") obtained a warrant to search a residence on South Dearborn Avenue in Kankakee, Illinois. Nine agents of KAMEG executed the search warrant, with Special Agent Joseph R. English breaching the front door and Deputy Director Kidwell leading the operation. KAMEG had previously searched the house four other times in the past year, and Kidwell considered it a "notorious drug house." Each time KAMEG raided the house, they found different people inside. On the night in issue, KAMEG officers found Kevin Allen and Franklin. Allen, who was 17-

2

years old, was in the upstairs middle bedroom and he identified the house as his home. In the same bedroom with Allen, the officers found a fanny pack that contained $204 and a clear plastic bag with a green leafy substance inside it. In the bedroom closet, at the bottom of a laundry basket, the officers found a clear mason jar which contained a green leafy substance. Nonetheless, Kidwell "didn't feel comfortable arresting him," and did not take Allen into custody.

¶ 5    Kidwell testified that after he knocked on the entry door, Franklin appeared and pulled back a sheer curtain that covered the front door. At that point, Kidwell announced: "Police. Search Warrant. Open the door." Franklin did not open the door, but instead turned away and walked into the living room. Kidwell instructed English to breach the door. Once the door had been knocked down, Kidwell followed Franklin into the living room. Kidwell could not remember if any lights were on in that room or any of the rooms on the first floor.

¶ 6    Three of the officers described Franklin's movements relative to the gun that was found in his vicinity. Kidwell testified that when he entered the living room, he saw Franklin's left hand approximately 6 inches from a black gun on a black couch. According to Kidwell, Franklin was "standing…on the living room floor with his hand outstretched toward the firearm." With his service gun pointed at Franklin, Kidwell directed him to "get down on the ground," which he did. Franklin never touched the gun.

¶ 7    Special Agent Burse was the second officer to enter the home. He recalled the TV being on and a light on "maybe in the dining room area." As to Franklin's movements, he testified that Franklin "went down on the couch with the items on the left-hand side of him and popped right back up. So, he sat down and then stood back up." He did not testify that Franklin either reached for or touched the gun. Officer Herberger was the third officer in the house. He did not indicate

3

that Franklin reached for or touched any of the items. When he entered the living room, he saw Franklin "kind of reaching towards the couch and there was a gun on the couch." Herberger testified that he "just yelled gun." Kidwell instructed Franklin "to stop, to show him his hands."

¶ 8        Kidwell identified the black gun found on the black leather couch in the living room as a .40 caliber Taurus handgun. Next to the gun, the officers found a cell phone with a black cover and white-camouflage game controller. The police did not fingerprint the cell phone or the controller. Nor did the State identify the owner of the cell phone. Kidwell and Burse both testified that the gun had been reported stolen, but neither recalled the name of the owner. Wilkins confirmed no fingerprints were found on the Taurus.

¶ 9        In Burse's search of Franklin's person, he found a clear plastic bag in his right front pants pocket containing 14 smaller plastic bags. Each of the smaller plastic bags had a single orange pill. Koulis, who specializes in the analysis of controlled substances, confirmed the pills found on Franklin tested positive for MDMA (or ecstasy). Franklin stated that he had just purchased the pills from Allen. He explained that he had met Allen playing basketball as part of the Amateur Athletic Union (AAU) league. They were planning on going on a double date that evening. Franklin testified that Allen had become his supplier and, because he lived in Chicago and would be in Kankakee that day, he decided to buy 14 pills at one time from Allen. Franklin stated that the pills were for his personal use and that he would go through the 14 pills in about four or five days. In Franklin's left front pocket, Burse found a clear plastic bag that contained a "green leafy substance" suspected to be cannabis.

¶ 10        Burse also participated in the search of the house, photographing and collecting the evidence located. He confirmed that he used the automatic flash feature on the camera when taking the photographs in the house. In the dining room, Burse tagged two digital scales, two

4

boxes of sandwich bags, and a green leafy substance. He also marked a Ruger .45 caliber handgun that was found under clothing and other items in a blue and orange duffle bag; the duffle bag was found in a dining room closet. Because Burse admitted the State was unable to connect any of this evidence to Franklin, defense counsel objected to the presentation of this evidence, but the objection was overruled.

¶ 11    On cross-examination, Burse confirmed that an Illinois State driver's license was found with the Ruger in the duffle bag in the closet. It was not Franklin's license and Burse did not know whether the individual identified on it lived at the South Dearborn house. Wilkins confirmed that no fingerprints were found on the Ruger and the State never sought to fingerprint the driver's license. In the kitchen, Burse tagged a "clear plastic bag containing suspected cannabis" in a cabinet under the sink as well as three "clear plastic bags containing a green leafy substance inside of a box" in another kitchen cabinet. Burse also found mail that was addressed to at least six different individuals at the South Dearborn address. None of the mail was addressed to Franklin.

¶ 12    None of the green leafy substances found throughout the house was tested by the State. Nonetheless, Kidwell referred to the "green leafy substance" found in Franklin's pocket as cannabis. On several occasions in front of the jury, Burse also referred to the "green leafy substance" as "loose marijuana" or "suspected cannabis." Herberger told the jury that "cannabis residue" was on the two digital scales found in the living room, although that too had not been tested. Wilkins testified that except for the two guns, the State did not test any of the other items found in the house for fingerprints. Except for the MDMA, none of the substances found was tested for identification as contraband.

¶ 13     The jury found Franklin guilty on both counts. Franklin's subsequent motion to vacate the jury verdict was denied and the trial court sentenced him to 16 years and 6 months for armed violence and 10 years for unlawful possession of ecstasy with intent to deliver. The trial court stated that the sentences would "merge," but did not include this instruction in its written order.

¶ 14     Franklin appeals.

¶ 15                              ANALYSIS

¶ 16     On appeal, Franklin argues that (1) the trial court erred in allowing testimony on inadmissible evidence; (2) the evidence was insufficient to prove him guilty of possession with intent to deliver; and (3) the evidence was insufficient to prove him guilty of armed violence. Alternatively, Franklin requests that we vacate his conviction for possession with intent under the one-act, one-crime doctrine.[1]

¶ 17                      A. Possession with Intent to Deliver

¶ 18     In reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Holliday*, 2019 IL App (3d) 160315, ¶ 10. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Id.* In reviewing the evidence presented, we must "allow all reasonable inferences from that evidence to be drawn in favor of the [State]." *People v. Martin*, 2011 IL 109102, ¶ 15. "An inference is a factual conclusion that can rationally be drawn by considering

---

[1] In this case, possession with intent to deliver has been alleged both as an independent felony and as the predicate offence for the charge of armed violence.

6

other facts." *State v. Funches*, 212 Ill. 2d 334, 340 (2004). Thus, reasonable inferences cannot be drawn in the absence of actual facts.

¶ 19    The trier-of fact need not be satisfied with each link in the chain of circumstances. *People v. Sutherland*, 223 Ill. 2d 187, 243 (2006). But, rather, it must be satisfied beyond a reasonable doubt that all the evidence, taken together, establishes the defendant's guilt. *Id.* An inference becomes speculative (thus unreasonable) when its factual conclusion is not within the ordinary understanding of the trier-of-fact—in light of the evidence presented. *People v. Petty*, 2020 IL App (3d) 180011, ¶ 21 (finding inference on chemical metabolization speculative because it "entails a level of chemical knowledge not ordinarily possessed by the average person").

¶ 20    We conclude that the actual evidence presented by the State is insufficient to establish intent to deliver the MDMA pills and we vacate Franklin's conviction for possession with intent to deliver the 14 pills of ecstasy. Because direct evidence establishing intent to deliver is rare, circumstantial evidence is often used to prove that element. *People v. Holliday*, 2019 IL App (3d) 160315, ¶ 20 (citing *People v. Robinson*, 167 Ill. 2d 397, 408 (1995)). The supreme court has noted that the quantity of a controlled substance can be sufficient to show intent to deliver, but the court cautioned that "such is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption." *Robinson*, 167 Ill. 2d at 411. "As the quantity of controlled substance in the defendant's possession decreases, the need for additional circumstantial evidence of intent to deliver to support a conviction increases." *Id.* at 413. The sufficiency of the evidence to prove intent to deliver is considered on a case-by-case basis. *Id.* at 412-13.

¶ 21    Franklin testified that the 14 pills found in his possession were for his personal use. The State provided no evidence to rebut this testimony. As the unrebutted evidence was that 14 pills are within the range of personal use, "the minimum evidence a reviewing court needs to affirm a conviction is that the drugs were packaged for sale, and at least one additional factor tending to show intent to deliver." *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 16. The State notes that the pills were packaged individually in plastic bags. It contends "that 14 individually packaged pills of ecstasy could not reasonably be considered to be possessed for personal use." However, given Franklin's unrebutted testimony that he had just purchased the pills from Allen a few moments before the police raided the house and he was searched, such packaging is neither conclusive nor particularly persuasive of his intent to deliver them to someone else.

¶ 22    The State also contends that the jury may infer an intent to deliver because Franklin was the only one downstairs near the scales, the sandwich bags, and a gun. However, Franklin remains unconnected to *any* of those items, beyond his mere presence in the house where they were located. Franklin's fingerprints were not retrieved from any item, including either scale. Nor is there any evidence to link Franklin to the house itself as anything other than a transactional visitor. Burse found mail that was addressed to at least six different individuals for the 531 South Dearborn address. None of the mail was addressed to Franklin. Moreover, the sandwich bags alone, which are only linked to the green leafy substance not proven to be contraband, are insufficient to establish an intent to deliver drugs.

¶ 23                              B. Testimony on Inadmissible Evidence

¶ 24    At trial, Franklin sought to exclude items unconnected to him and unrelated to the charges pending against him: the unidentified green leafy substance, digital scales, sandwich bags, and the Ruger .45 caliber handgun. The trial court disallowed the admission of the

8

evidence but permitted discussion of the materials at trial and in closing argument. On appeal, Franklin argues that the trial testimony and discussion was not relevant to the offenses charged and was prejudicial to his defense. He contends that the presence of the leafy substance and other materials, without more, is not indicative of *his* intent to deliver drugs. He notes that, except for the ecstasy, nothing found in the house and shown to be or to be related to contraband was directly or constructively tied to him. We agree with Franklin and find that the trial court abused its discretion by allowing trial testimony and arguments on these items.

¶ 25    Decisions as to the admissibility of evidence are entrusted to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 35. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "Evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence." *People v. Morgan*, 197 Ill. 2d 404, 455-56 (2001). "However, a trial court may reject evidence on the grounds of relevancy if the evidence is remote, uncertain or speculative." *Id.* Relevant evidence may also be excluded "if its probative value is outweighed by unfair prejudice, confusion of the issues, or potential to mislead the jury." *People v. Nepras*, 2020 IL App (2d) 180081, ¶ 20.

¶ 26    The items located in the dining room and presented at trial were never connected to Franklin. The State made no attempt to show that Franklin possessed the Ruger. No fingerprints were collected or retrieved from the Ruger. It was found with a driver's license that was not Franklin's license and, again, no effort was made to connect it to him. Moreover, the State made

9

no attempt to test any of the "green leafy substances" either in the single bag found on Franklin or otherwise in the house and dropped any charges against him related to cannabis. Despite these facts, the State continually implied to the jury that the "green leafy substance" was cannabis, and therefore, Franklin must be a drug dealer.

¶ 27        The State contends that the evidence was not presented in a manner that was unduly prejudicial to Franklin. The State is incorrect. After presenting the items, without connecting them to Franklin, Special Agent Burse testified that sandwich bags and digital scales are "items" that "assist someone in the preparation of drugs for delivery." However, sandwich bags and digital scales are just as likely ordinary household items, unassociated with drug transactions. Their only conceivable link to criminal activity in this case is the untested leafy substance as to which (1) there was no evidence it was contraband and (2) no charges had been pursued. We conclude that the evidence ostensibly sustaining the armed violence charge was inadmissible, and we reverse Franklin's conviction.

¶ 28        Because we reverse the armed violence conviction on this basis, we must determine whether double jeopardy prohibits retrial on this charge. "The double jeopardy clause does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings, but retrial is barred if the evidence introduced at the initial trial was insufficient to sustain the conviction." *People v. Drake*, 2019 IL 123734, ¶ 20. "[F]or purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). "In determining the sufficiency of the evidence, a reviewing court must consider whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Drake*, 2019 IL 123734, ¶ 21

¶ 29        The evidence presented at trial permits a reasonable inference that Franklin was apprehended while attempting to exercise control over a firearm. A defendant commits the offense of armed violence when he has "immediate access to or timely control over a weapon" and has "the intent and capability to maintain control and possession of the weapon." *People v. Smith*, 191 Ill. 2d 408, 412 (2000). The testimony of both officers Officer Herberger and Deputy Director Kidwell lends some support to an inference that Franklin had the intent to take possession of the firearm when the officer placed him under arrest. Herberger testified that he saw Franklin "kind of reaching towards the couch and there was a gun on the couch." Kidwell also testified that Franklin had his "hand outstretched toward the firearm." Thus, we find the evidence was sufficient to sustain Franklin's conviction for armed violence and we remand the case for further proceedings on that charge.

¶ 30                                CONCLUSION

¶ 31        The judgment of the circuit court of Kankakee County entering a conviction for unlawful possession of a controlled substance with intent to deliver is vacated. The judgment of conviction for armed violence is reversed and the matter is remanded for further proceedings not inconsistent with this decision.

¶ 32        Vacated; Reversed and Remanded.

¶ 33        JUSTICE HOLDRIDGE, specially concurring in part and dissenting in part:

¶ 34        I agree with the majority's finding that the trial court abused its discretion by allowing trial testimony and arguments regarding the "green leafy substance." The court had previously disallowed the admission of the evidence of this "green leafy substance," and it had not been tested for the presence of cannabis or other drugs. However, I would find that the sandwich bags, digital scales, and Ruger .45 caliber handgun were properly introduced as they were related to

11

the charge of possession with intent to deliver. *See Robinson*, 167 Ill. 2d 397, 408 (1995). Therefore, I would find that the court abused its discretion in allowing testimony regarding the "green leafy substance" but not in allowing the introduction of the sandwich bags, digital scales, and Ruger .45 caliber handgun.

¶ 35        Based on the improper introduction of the "green leafy substance," I would vacate both of the defendant's convictions and then determine whether double jeopardy prohibits retrial on the charges. I agree with the majority that the evidence was sufficient to sustain the defendant's conviction for armed violence. However, I would find that the evidence was also sufficient to sustain the conviction of possession with intent to deliver. As the majority states, the defendant testified that the 14 ecstasy pills were for his personal use. The State did not present any evidence to rebut this. Thus, to affirm the conviction, at minimum the State needed to show that the drugs were packaged for sale and at least one additional factor. *Ellison*, 2013 IL App (1st) 101261, ¶ 16. There are a number of other factors to consider in determining intent to deliver, including: (1) the quantity of controlled substance; (2) the high purity of the drug; (3) possession of weapons; (4) possession of a large amount of cash; (5) possession of police scanners, beepers, or cell phones; (6) possession of drug paraphernalia; and (7) the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408.

¶ 36        Here, the pills were packaged for sale in separate bags. The defendant was found 8 to 10 feet away from a desk containing the scales and sandwich bags. He was also near a gun. He was the only person downstairs near these items. Moreover, the defendant had on his person a bag containing the "green leafy substance," which was found all over the house, packaged in the same way as the ecstasy pills. Though evidence of the "green leafy substance" was improperly admitted, for purposes of double jeopardy, we consider all evidence submitted at the original

12

trial, even improperly admitted evidence. *People v. Drake*, 2019 IL 123734, ¶¶ 20-21. Taking the

evidence in the light most favorable to the State, I would find that a rational trier of fact could

have found the defendant guilty beyond a reasonable doubt of possession with intent to deliver.

Therefore, I would remand for retrial on both charges, without the improper evidence of the

"green leafy substance." *See id.* ¶ 29.