**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210351-U

Order filed September 26, 2023
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0351 Circuit No. 20-CF-528 |
| | ) | |
| GAVIN P. JONES, | ) ) | Honorable Raymond A. Cavanaugh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices McDade and Albrecht concurred in the judgment.
_____

**ORDER**

¶ 1      *Held*: Trial counsel provided ineffective assistance where he opened the door for the admission of otherwise inadmissible prejudicial evidence.

¶ 2      Defendant, Gavin P. Jones, appeals from his conviction for unlawful possession of methamphetamine with intent to deliver. Defendant argues, *inter alia*, that he was deprived of effective assistance where defense counsel opened the door to highly prejudicial video evidence. We reverse in part, affirm in part, and remand for further proceedings.

¶ 3    I. BACKGROUND

¶ 4    On September 18, 2020, the State charged defendant with unlawful possession of methamphetamine with intent to deliver (720 ILCS 646/55(a)(1), (a)(2)(B) (West 2020)) and unlawful possession of methamphetamine (*id.* § 60(a), (b)(2)). The case proceeded to a jury trial on May 17, 2021, along with an associated driving while license suspended charge (625 ILCS 5/6-303 (West 2020)).

¶ 5    Officer Dan Williams of the Galesburg Police Department testified that on September 17, 2020, at approximately 2 p.m., he was parked in a lot on Water Street. He observed a yellow Mustang driving on Water Street. Williams recognized the vehicle and indicated that he had run the registration previously and knew the vehicle to be owned by defendant. Williams observed defendant operating the vehicle. Williams was aware that defendant's driver's license was suspended. He activated his lights, and defendant ultimately turned into a parking lot. While there, Williams observed defendant lean across the passenger's seat and throw an object out the window. Williams approached defendant and asked for his license and registration. Defendant admitted to Williams that his driver's license was suspended. Williams placed defendant under arrest for the traffic infraction and investigated the object that had been thrown from the vehicle.

¶ 6    Williams testified that he discovered a clear baggie with a substance inside. The contents of the baggie were later tested and determined to be 8.4 grams of methamphetamine. Williams searched defendant's vehicle and discovered a cell phone, $56, and between 20 and 30 red plastic baggies which "[they] call[ed] Apple bags." Williams indicated that the Apple company makes the 1 to 1½-inch bags. Williams testified that he had been a police officer for over 23 years. During that time, he had attended "a lot" of trainings. As part of those trainings, Williams had "been trained to see the items that are typically used *** in the delivery of controlled substances[.]"

Williams indicated that he had made well over 30 arrests for unlawful possession of a controlled substance with intent to deliver. Based on his training, experience, and prior arrests, Williams testified that the bags were used for selling drugs. Williams testified that he had never seen the bags used for any legitimate purpose. A portion of the squad car video depicting the traffic stop was admitted and published to the jury.

¶ 7        Detective Timothy Spitzer of the Galesburg Police Department testified that he and another detective interviewed defendant on September 18, 2020, at defendant's request. Spitzer indicated that the interview had been video recorded. An excerpt of the video was admitted and published to the jury. The video depicted defendant receiving his *Miranda* rights and his admission to throwing "the dope" out of the car window.

¶ 8        On cross-examination, Spitzer indicated that he could not remember the exact length of the entire video recorded interview but believed it to have taken "close to an hour." When asked whether their discussion had been confined to the events of September 17, 2020, Spitzer indicated that it was not. Spitzer testified that he and defendant discussed other criminal activity that defendant was offering to assist law enforcement with. Spitzer described defendant's demeanor during the interview as "varied" and indicated that defendant was concerned about the safety of his family due to his involvement "in some dangerous criminal activity." Defense counsel questioned Spitzer about how they elicited the statements that were contained within the redacted video, asking:

> "Q. And the portion of the video that was just played, that entailed after questioning by officers regarding that if officers were going to make any action with the information he was giving, he was going to have to speak about what occurred the day before; correct?

3

A. Not specific to that. We questioned him on both sides of the statement that you're seeing there.

Q. But it would be fair to say that you or [the other detective] indicated if his information was going to be viewed as trustworthy, he would have to explain also what happened the day before?

A. We explained that he needed to show us and other agencies involved that he was trustworthy in the first place.

Q. And that would include at least talking about what happened the day before?

A. It would help."

¶ 9    At the conclusion of these questions, the State requested a sidebar. It informed the court that defense counsel's line of questioning had left "the jury with an inference that [it had] been less than forthcoming in what's going on, [it] purposely excerpted this just to focus on the *Miranda* and his admission." To remedy this, the State indicated that it was "left with no other choice" but to play the interview in its entirety. Defense counsel responded that:

"[T]he State opened the door for this. They selectively chose portions of the video relating only to his admissions and left out all of the rest of the interview including that—as the officer testified—15 minutes from the *Miranda* warnings before this admission is made. I think the jury has the right to know and the officer can testify that—it wouldn't be hearsay at this point since the State has opened the door to it that he can testify to that.

The State has chosen not to play the whole video and they should be bound by their choices to selectively pick for the jury. They could have only asked the

4

officer about the statements rather than playing the video and then I would have had the burden to then present the entire one for *** the ability to have the entirety of the video but that would still be at my discretion to do it."

¶ 10 The court informed defense counsel his questioning did create an inference, and it was not going to bar the State from introducing the video of defendant's entire interview with detectives. After hearing this, defense counsel objected to the admission of the full video on confrontation clause grounds because the second detective in the video did not testify. This objection was ultimately overruled. The court granted a recess for the State to decide how it wanted to proceed.

¶ 11 After the recess, the State informed the court that it did intend to play the entire video. It indicated that it originally redacted the video in the interests of justice but now needed to play the entire video "to rebut the inferences made in cross-examination that [it was] leaving things out purposefully." The court inquired as to whether the parties would stipulate that defendant had not been threatened or coerced. Defense counsel indicated that he would stipulate that no threats had been made but he did not feel that he could agree that the detectives' statements to defendant were not coercive. The trial resumed and defense counsel again objected to the admission of the full video of the interview, citing a lack of foundation. The objection was overruled, and the entire interview was admitted and published to the jury.

¶ 12 During the interview, defendant indicated that he wanted to talk to detectives about some very dangerous individuals. Before he provided any information, detectives asked about the events on September 17, 2020. Defendant admitted that he had been driving, that his license was suspended, and to using "dope." Defendant offered information to detectives in exchange for not pursuing any drug charges against him. Detectives informed defendant that he would need to discuss the events of September 17, 2020, to establish his trustworthiness, indicating that if he was

5

not truthful about those events then no one would believe any other information he provided. Defendant responded that if he made admissions about September 17, 2020, the state's attorney could still refuse to help or work with him because of who he was and his prior criminal history. Detectives acknowledged that possibility and indicated they were not "running a game on him" and it "would be a hard sell, regardless."

¶ 13        Defendant indicated that the individuals he possessed information about were going to kill him. The detective asked, "Without saying any names, what are we talking about?" Defendant responded that he was talking about "Mexicans" that are from "everywhere." Defendant indicated that the drugs he possessed on September 17, 2020, were from those individuals. He stated that he believed the individuals to be a part of the cartels. They possessed large amounts of drugs which defendant could either have delivered to him or pick up from them. Defendant became emotional and expressed concern about the safety of his family. Defendant explained that he became involved with them to make money but now owes $10,000. Defendant explained that when he sells the drugs, he deals with various delivery people, but the drugs all come from one source. When asked if he would provide information about these individuals to someone higher up, defendant began to discuss the sentencing range for the charge, stating that he would be facing two to five years' imprisonment on the drug charge. Detectives asked again about the events of the previous day, and defendant admitted to driving on a suspended license and throwing the drugs out the car window. Defendant again expressed concern for the safety of his family. He told detectives that he needed to be released as soon as possible without any drug charges, otherwise he would just "eat the charge." If he did not, the cartel would kill him.

¶ 14        After the video was published to the jury, the State rested. Defense counsel renewed his objection based on a confrontation clause violation then moved for a mistrial. Counsel also filed a

6

motion for directed finding on the unlawful possession of methamphetamine with intent to deliver count. The State argued that evidence of defendant's possession of the Apple bags and his admission to dealing drugs were sufficient to support a denial of the motion. The court denied both motions. In denying the motion for directed verdict, the court indicated that it was a close call but, in the light most favorable to the State, a trier of fact could return a finding of guilty.

¶ 15    Defendant presented no evidence. During closing arguments, defense counsel argued that defendant asked to speak with detectives to "get out of the life that *** he got sucked into" and was repeatedly told he would receive no help without discussing the events of September 17, 2020. Defense counsel highlighted defendant's fear for his family's safety and argued that defendant said what he did "[b]ecause he knew that was the only way that he was going to get any sort of members of law enforcement to potentially help him." During deliberations, the jury sent three notes to the court, two questioning the evidence provided regarding intent to deliver and one indicating that they could not agree on a verdict for one of the charges. Eventually, the jury found defendant guilty on all counts.

¶ 16    On July 9, 2021, defense counsel filed a motion for new trial alleging, in pertinent part, that the court erred when it allowed opinion testimony from Williams when he had not been tendered as an expert, allowed defendant's entire video recorded interview into evidence without the proper foundation, and denied defendant's motion for mistrial following the admission of the full video. The court denied defendant's motion for new trial. After a sentencing hearing, the court found that the two counts merged and sentenced defendant to 6½ years' imprisonment for unlawful possession of methamphetamine with intent to deliver. Defendant appeals.

¶ 17                                    II. ANALYSIS

¶ 18    Defendant argues on appeal that he was provided ineffective assistance of counsel where defense counsel, on cross-examination, initiated a line of questioning that opened the door for the entirety of defendant's video recorded interview to be published to the jury. Defendant asserts that the contents of the video bolstered the State's evidence of defendant's intent to deliver methamphetamine, prejudicing defendant. Defendant further argues that the court erred in allowing expert testimony by a lay witness.

¶ 19    "Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois." *People v. Domagala*, 2013 IL 113688, ¶ 36. Claims of ineffective assistance of counsel are measured against the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced defendant. *Id.* To establish prejudice, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 20    "To establish deficiency, the defendant must overcome the strong presumption that the challenged action *** might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "[A] reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 21    Here, defense counsel initiated a line of questioning during the cross-examination of Spitzer that addressed parts of the interview not included in the redacted video that had been admitted by the State which implied that the State had been less than forthright about the entire

8

interview and that possibly the detectives had coerced defendant into confessing to possessing the baggie of methamphetamine on September 17, 2020. As a result, the State indicated that it would need to play the entire video recording of defendant's interview to cure the suggestion that the State had purposely been "less than forthcoming" with the redacted version of the video.

¶ 22 Our review of the record demonstrates that counsel's performance fell below an objective standard of reasonableness. Counsel believed that the State's redaction of the video enabled him to ask about the questions and statements made by detectives leading up to defendant's admissions that would previously have been considered hearsay. Counsel's arguments indicate that he believed the State should be bound by choices it made in redacting the video and the entire video should not be played unless the defense decided to play it. The irony is that the video was redacted to keep overly prejudicial evidence contained in the defendant's statements out for the benefit of the defendant. When the court announced that the State could admit the entire video, counsel immediately objected to the admission on confrontation clause grounds. After this objection was overruled, counsel again attempted to bar the admission of the video by objecting to its foundation. Further, counsel moved for a mistrial based on the admission of the entire interview and argued the same in his posttrial motion.

¶ 23 It is apparent from his questions and closing argument that counsel's strategy was to argue that defendant's confession was coerced. However, counsel's actions demonstrate that he was not seeking to admit the entire interview as part of his trial strategy but laboring under the erroneous belief that he could ask questions about the redacted portions of the video because the State's actions allowed it. Further, even if counsel's strategy was to admit the entire video in furtherance of his argument, that strategy cannot be characterized as sound. The redacted portions of the video contained references to other criminal acts, the sentencing range defendant faced, and his

9

admission to dealing drugs for the Mexican cartels, which provided no benefit to defendant nor substantiated his argument of coercion.

¶ 24 The State argues that the admission of the video did not prejudice defendant because the evidence was overwhelming and defendant's statements in the video could not have affected the jury's decision. However, the evidence presented by the State to establish defendant's intent to deliver was far from overwhelming.

¶ 25 Direct evidence of intent to deliver is rare, and the element is generally proven by circumstantial evidence. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). Factors probative of a defendant's intent to deliver include whether the quantity of the substance was too large for personal use; the purity of the substance; the possession of weapons; the possession of large amounts of cash; the possession of police scanners, beepers, or cell phones; the possession of drug paraphernalia; and the manner in which the substance is packaged. *Id.* Our supreme court has made clear that these factors are merely examples of the "many different factors [that] have been considered by Illinois courts as probative of intent to deliver." *Id.* However, this list is not "exhaustive" or "inflexible." *People v. Bush*, 214 Ill. 2d 318, 327 (2005).

¶ 26 Outside of defendant's full interview, the State elicited evidence that defendant possessed 8.4 grams of methamphetamine, $56, a cell phone, and between 20 and 30 Apple bags. The methamphetamine was not packaged inside the Apple bags. The record contains no evidence of whether the small amount of methamphetamine defendant possessed was greater than an amount for personal use. No evidence was elicited concerning the purity of the methamphetamine or any weapons or drug paraphernalia found. Further, Williams testified that he observed defendant driving in the middle of the afternoon. He did not observe any suspicious transactions or circumstances that would lend itself to an inference of intent to deliver. See *id.* at 328 (evidence

10

that defendant was standing alone behind a fence at 2 a.m. selling small items from a brown paper bag that was later found to contain cocaine was as "equally probative of intent to deliver" as the enumerated *Robinson* factors).

¶ 27        Defendant possessed only a small amount of drugs and cash, and a cell phone, a commonly used item. See *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 26 (due to the popularity of mobile communication devices, possessing a cell phone, without more, "provides little, if any, support to a finding that defendant intended to distribute drugs"). Where a small quantity of drugs is found, the minimum evidence to sustain a conviction for intent to deliver is that the drugs were packaged for sale and one additional factor indicating intent to deliver. *People v. Clinton*, 397 Ill. App. 3d 215, 225 (2010). Here, the only evidence suggesting an intent to deliver is the Apple bags, which were unused and contained no methamphetamine. This evidence alone would likely have been insufficient to sustain a conviction for unlawful possession of methamphetamine with the intent to deliver. See *People v. Sherrod*, 394 Ill. App. 3d 863, 868 (2009) (small amount of cocaine packaged in 17 separate baggies, without more, was insufficient to sustain a conviction for unlawful possession with intent to deliver).

¶ 28        Accordingly, a reasonable probability exists that evidence provided by the entire interview video influenced the jury to convict defendant of unlawful possession of methamphetamine with intent to deliver. The full interview contained statements regarding defendant's prior criminal activity and his admission to dealing drugs for individuals that he believed to be involved with the Mexican cartels. That admission, coupled with the Apple bags, is the evidence that the State argued was sufficient to sustain a conviction in their response to defendant's motion for directed finding. Further, even after viewing this evidence, the jury's questions to the court demonstrated hesitancy regarding defendant's intent to deliver. We cannot say, considering the record before us, that the

11

jury would have returned a conviction without viewing defendant's entire interview. Thus, defendant was prejudiced by the deficient performance of counsel.

¶ 29    For the foregoing reasons, we find defendant received ineffective assistance of counsel, reverse his conviction for unlawful possession of methamphetamine with intent to deliver, and remand for further proceedings, to include a new trial, if necessary. We note that defendant did not challenge his other convictions. Accordingly, his convictions for unlawful possession of methamphetamine and driving while license suspended are affirmed. Because we have reversed defendant's conviction due to ineffective assistance of counsel, we need not address defendant's other contention. On remand, should the State decline to further prosecute defendant for unlawful possession of methamphetamine with intent to deliver, a new sentencing hearing will be required on the remaining convictions.

¶ 30                                    III. CONCLUSION

¶ 31    The judgment of the circuit court of Knox County is reversed in part, affirmed in part, and remanded for further proceedings.

¶ 32    Reversed in part and affirmed in part.
¶ 33    Cause remanded.