NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220325-U

NO. 4-22-0325

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| | ) | No. 20CF790 |
| ROBERT W. BENNETT, | ) | |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Thomson, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly denied defendant's motion to suppress evidence, and the evidence below was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 2   Defendant Robert Bennett appeals from the trial court's judgment finding him guilty of possession with intent to deliver methamphetamine. On appeal, defendant contends that (1) the trial court erred in denying his motion to suppress because the odor of cannabis alone was insufficient to establish probable cause and (2) the State failed to prove beyond a reasonable doubt that he intended to deliver methamphetamine. For the following reasons, we affirm.

¶ 3                    I. BACKGROUND

¶ 4   Defendant was charged by information with unlawful possession with intent to deliver more than 15 but less than 100 grams of methamphetamine (720 ILCS 646/55(a)(2)(C) (West 2020)). Prior to trial, defendant filed a motion to quash arrest and suppress evidence.

(Although the motion that defendant filed in the trial court was titled as a "Motion to Quash Arrest and Suppress Evidence," it should have been titled a "Motion to Suppress Evidence" for the reasons set forth in cases such as *People v. Winchester*, 2016 IL App (4th) 140781, ¶¶ 22-30, and *People v. Dunmire*, 2019 IL App (4th) 190316, ¶¶ 28-32.) Defendant argued that he was unlawfully seized when police ordered him out of a parked vehicle and that police lacked probable cause for the subsequent search of the vehicle or the protective pat-down search of defendant. The following evidence was presented at the hearing on defendant's motion.

¶ 5         Defendant testified that shortly after 12 a.m. on December 29, 2020, he, Chad Taylor, and Larry Lierly drove to Camp Point Tire in Camp Point, Illinois. Lierly worked at the tire company and had asked defendant and Taylor to drive him there to find money that he lost earlier in the day. Upon arriving, Lierly went inside to look for his money while defendant and Taylor waited for him in the vehicle. At some point, defendant exited the vehicle to smoke cannabis and then returned to the vehicle. At approximately 12:40 a.m., a deputy arrived and began questioning defendant and Taylor about their names and why they were at the tire company at that time of night. The officer said that he thought a burglary of the premises might be in process. Defendant and Taylor explained why they were there, but defendant said the deputy "went on and on and kept trying to get us out of the vehicle." Another deputy arrived on the scene and "got" defendant and Taylor out of the vehicle. The deputy told defendant that he was going to pat him down for weapons, even though defendant felt that neither he nor Taylor had done anything to indicate they posed a threat to the deputies. Defendant was arrested as a result of substances recovered during the pat-down search. Defendant admitted that after the pat-down search, he told the deputy that the material found in his pockets was methamphetamine. Defendant made the same

statement to deputies at the police station, and he testified that the drugs were in powder form in a plastic bag.

¶ 6    Deputy Jared Summers of the Adams County Sheriff's Office testified that he was on patrol just after midnight on December 29, 2020. At approximately 12:40 a.m., he noticed a vehicle in the rear parking lot of Camp Point Tire with its headlights off but its brake lights on. Camp Point Tire was not open at that time, so Deputy Summers decided to approach the vehicle. There were two people in the vehicle: Taylor was in the driver's seat, and defendant was in the front passenger seat. As the deputy began to speak with the two men, he noticed the "strong" smell of marijuana emanating from the vehicle. He also observed that defendant appeared "nervous" and did not make eye contact; defendant refused to provide his name and "really didn't want to answer" any of Summers's questions. Deputy Summers acknowledged that defendant did not have to answer his questions, but he reiterated that, based on his experience and observations, defendant appeared "nervous." Deputy Summers asked defendant why he was there, to which defendant responded that they were waiting for a friend who they had just dropped off and who was inside the tire business. That friend, Larry Lierly, later appeared, and Deputy Summers began to speak with him.

¶ 7    Meanwhile, Adams County Deputy Scott Doellman arrived on the scene. Deputy Summers testified that before Deputy Doellman conducted the pat-down search, defendant stated that he had a "roach" in his pocket. Doellman said that a "roach" is "street slang for cannabis that's rolled up in a blunt." Methamphetamine was recovered from defendant's pocket during the pat-down search. Defendant was subsequently interviewed at the police station and made statements about the substance recovered from his pocket.

¶ 8        Deputy Summers further testified that he knew that Lierly was a member of the family who owned and operated the tire company. He agreed that Lierly gave a reasonable explanation for why he was there and confirmed what Deputy Summers was told by defendant and Taylor. Deputy Summers believed that there was evidence of a crime in addition to the smell of cannabis. He testified that, during their interaction, defendant would not look at him, refused to provide his name, and acted "nervous." Based on this behavior, it seemed that defendant was "concealing something," and Deputy Summers believed that defendant posed a danger to others. Deputy Summers acknowledged that defendant could have been concealing other things besides a weapon. Although there was no "indication" that defendant had a weapon, Deputy Summers characterized it as a "suspicion." Deputy Summers acknowledged that to justify a pat-down search or a frisk, he had to have reasonable suspicion, based on specific and articulable facts, that the person is a danger to others. When defense counsel asked, "And you don't have any of those, do you," Deputy Summers answered, "That he was a danger at the time? No."

¶ 9        Deputy Summers testified that Taylor and Lierly were also patted down for weapons. A sobriety test was not performed on Taylor, who was in the driver's seat of the vehicle, but Deputy Summers observed Taylor and Lierly during the encounter and neither appeared "high." The vehicle was searched before Taylor and Lierly were allowed to drive it away. Deputies found a scale and a "roach," and defendant admitted they belonged to him. Later, at the police station, defendant again admitted the scale was his. At some point, defendant said that he had a medical cannabis card from Oklahoma, although Deputy Summers did not recall if he saw it. Deputy Summers was not wearing a body camera, and his vehicle camera was not activated at the time of the events in question. Defendant was taken to the Adams County jail and interviewed; the interview was not recorded. Finally, Deputy Summers testified that the methamphetamine was in

a ziplock bag and that it was not in powdered form but was a "crystalized substance," similar to ice or sea salt.

¶ 10    Adams County Sherriff's Deputy Scott Doellman testified that he arrived at the tire shop at approximately 12:40 a.m. He also smelled the strong odor of cannabis emanating from the vehicle. He observed defendant and Taylor exit the vehicle at Deputy Summers's "direction." Deputy Doellman told defendant he was going to pat him down for "everyone's safety" after defendant said he had the roach in his pocket and because of the cannabis odor coming from the vehicle. Deputy Doellman conducted the pat-down search by using open hands to pat the outside of defendant's clothing. He felt a round and hard "bulge" in defendant's front pocket a bit bigger than a golf ball. He acknowledged that he did not have "articulable facts" justifying his belief that it was a weapon.

¶ 11    The trial court denied defendant's motion. The court began by observing that the officers were justified in approaching the vehicle as it was parked at the tire company and speaking to its occupants. The court noted that it was late at night, the tire company was closed, the vehicle was parked with its headlights off but its brake lights on, and it was a small-town area. The trial court found that these facts were sufficient to justify Deputy Summers's decision to stop and investigate. The court then observed that the occupants of the vehicle were under no obligation to speak to the deputy when he approached. However, the deputies smelled cannabis coming from the vehicle and, noting defendant's own testimony that he smoked cannabis while waiting for Lierly, the court did not believe that this was a "made-up excuse to investigate." Once the deputies smelled cannabis, their inquiry could constitutionally change from one akin to community caretaking to an investigation into the possible crime of illegal possession of a controlled substance in a motor vehicle. The court reasoned that cannabis was still contraband in that it could only be

legally possessed under certain circumstances, including in a sealed and odor-proof container when being transported in a vehicle.

¶ 12        The case proceeded to a stipulated bench trial. All the evidence from the hearing on the motion to quash was admitted, including the testimony from defendant and other witnesses. The parties also stipulated to a laboratory report from the Illinois State Police showing that the substance recovered from defendant was methamphetamine and that it weighed 73.9 grams. The trial court found defendant guilty of unlawful possession with intent to deliver more than 15 grams but less than 100 grams of methamphetamine. Defendant was sentenced to six years in prison.

¶ 13        This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15        Defendant challenges the trial court's denial of his "motion to quash arrest and suppress evidence," contending that he was seized without probable cause when Deputy Summers "ordered" him out of the vehicle based solely on having smelled marijuana emanating from the vehicle. Defendant claims that, due to recent developments in the law, cannabis is no longer contraband and its smell alone cannot provide probable cause that a crime has occurred. Accordingly, defendant asserts that the police did not have probable cause to subsequently search the vehicle and pat him down for weapons. We disagree.

¶ 16                        A. Motion to Suppress Evidence

¶ 17        When reviewing a ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). We accord great deference to the trial court's factual findings and will reverse them only if they are against the manifest weight of the evidence. *Id*. However, we review *de novo* the court's ultimate ruling on a motion to suppress involving probable cause. *Id.*

¶ 18　　　　A defendant who files a motion to suppress evidence bears the burden of proof at a hearing on the motion. *People v. Gipson*, 203 Ill. 2d 298, 306 (2003). "A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure." *Id.* at 306-07. "A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress." *People v. Brooks*, 2017 IL 121413, ¶ 22. "Where the basis for the motion is an allegedly illegal search, the defendant must establish both that there was a search and that it was illegal." *Id*. If a defendant does so, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. *Gipson*, 203 Ill. 2d at 307. The ultimate burden of proof remains with the defendant. *Id.*

¶ 19　　　　Defendant argues that he was "seized" when Deputy Summers "ordered" him out of the vehicle and that the seizure was not supported by probable cause or even a reasonable, articulable suspicion of a crime. He therefore contends that the protective pat-down search was constitutionally impermissible, as was the subsequent search of the vehicle. Defendant characterizes the deputies as having acted only upon the odor of cannabis emanating from the vehicle, which he contends is now insufficient to establish probable cause to search a vehicle due to changes in Illinois law.

¶ 20　　　　Every person has the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. However, not every encounter between police and a private citizen results in a seizure. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or "*Terry*" stops (see *Terry v. Ohio*, 392 U.S. 1 (1968)), which must be supported by a reasonable, articulable suspicion of criminal activity; and

(3) encounters that involve no coercion or detention, known as consensual encounters, which do not implicate the fourth amendment. *Id.*

¶ 21 It is well settled that police can approach and question a person in a parked vehicle without that encounter being labeled a seizure. *Id.* at 551; see 4 W. LaFave, Search & Seizure § 9.4(a), at 419-21 (4th ed. 2004) ("[I]f an officer merely walks up to a person standing or sitting in a public place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure."). Even when police have no basis for suspecting a particular individual, they may still ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage, so long as they do not convey a message that compliance with their requests is required. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). The question now shifts to what was learned by the officers during this encounter.

¶ 22 The Illinois Supreme Court has long held that the smell of cannabis alone is sufficient to justify the search of an automobile. *People v. Stout*, 106 Ill. 2d 77, 87 (1985). Recent decisions of this court establish that *Stout* remains good law. *People v. Molina*, 2022 IL App (4th) 220152, ¶¶ 40-44, *appeal allowed*, No. 129237, 2023 WL 2751668 (Ill. Mar. 29, 2023); *People v. Hall*, 2023 IL App (4th) 220209, ¶¶ 24-27. We decline defendant's invitation to revisit the conclusion reached in these decisions and rely on the precedent they establish. Consequently, the smell of cannabis alone was sufficient to justify a search of the vehicle. Moreover, the officers would have also been justified in searching the occupants of the vehicle. *People v. Boyd*, 298 Ill. App. 3d 1118, 1127 (1998).

¶ 23 Defendant argues that no evidence was presented that either deputy was trained to detect the presence of cannabis. However, defendant had the opportunity to cross-examine the deputies regarding their training at the suppression hearing. At the conclusion of that hearing, the

trial court found that the deputies smelled the strong odor of cannabis coming from the vehicle. We see no basis in the record to conclude that this factual finding was against the manifest weight of the evidence.

¶ 24        Focusing on the smell of cannabis "alone," however, does not adequately capture the circumstances of this case. Even without considering the smell of cannabis, the officers possessed a basis under *Terry* for an investigatory stop (or, more specifically here, detention) of the vehicle under the circumstances presented: an occupied vehicle parked in a dark parking lot of a closed commercial establishment in the dead of night; defendant appeared "nervous" and failed to make eye contact; and he was unwilling to answer questions or provide his name. The vehicle was effectively detained for purposes of investigation; once the vehicle was detained, it was permissible for the officer to require the occupants to exit. *People v. Gonzalez*, 184 Ill. 2d 402, 415 (1998).

¶ 25        Upon exiting the vehicle, it was defendant who provided the clearest justification for a search of his person: he volunteered to Deputy Doellman—before Doellman conducted a pat-down search—that a "roach" was in his pocket. Consequently, while we may look to *Stout*, *Molina*, or *Hall* to rely on smell to infer the presence of cannabis, it is not necessary to do so here because defendant himself *confirmed* the presence of cannabis.

¶ 26        The totality of the facts and circumstances known to police after defendant's admission regarding the "roach" in his pocket established probable cause that defendant possessed cannabis in a motor vehicle that was not "in a sealed, odor-proof, child-resistant cannabis container." 625 ILCS 5/11-502.15(b), (c) (West 2020). As a result, the pat-down search of defendant and the search of the vehicle were proper. See *People v. Kolichman*, 218 Ill. App. 3d 132, 139 (1991) ("A search incident to arrest is a reasonable intrusion under the fourth

amendment."); *People v. Bridgewater*, 235 Ill. 2d 85, 94-95 (2009) (stating police may conduct a warrantless search of a vehicle incident to an arrest where they reasonably believe evidence relevant to the crime can be found inside the vehicle). A seizure supported by probable cause is not unreasonable and therefore does not violate the fourth amendment. *People v. Gherna*, 203 Ill. 2d 165, 176 (2003).

¶ 27        Defendant points out that the vehicle was parked in the lot of a private tire company and was not pulled over while being driven on the street. We note that defendant had no interest in the tire company premises, so he cannot assert the property owner's fourth amendment rights. See *City of Champaign v. Torres*, 214 Ill. 2d 234, 246 (2005) (citing *People v. Rosenberg*, 213 Ill. 2d 69, 77-78 (2004) ("[A] defendant seeking to claim the protections of the fourth amendment must demonstrate that he or she *personally* has an expectation of privacy in the place searched and that his or her expectation is reasonable." (Emphasis in original.))). Thus, regardless of where Deputy Summers encountered defendant, the question is whether there was probable cause at that time to believe that defendant had unlawfully possessed cannabis in a motor vehicle. Defendant told the deputy that they had just driven to the tire company and were waiting while Lierly was inside looking for money. The deputy could reasonably believe that the vehicle arrived at the parking lot by being driven on the street, and in fact the tire company is located just off the highway. Therefore, Deputy Summers had probable cause to believe that defendant had just possessed cannabis in a motor vehicle that was not stored as legally required. See *In re M.G.*, 2022 IL App (4th) 210679, ¶¶ 84-85 (holding there was probable cause to believe defendant was in illegal possession of cannabis in a motor vehicle that was located by police in the parking lot of a private restaurant).

¶ 28    We need not decide whether the pat-down search was justified based on officer safety. As discussed above, the odor of cannabis alone provides probable cause to search the vehicle and its occupants. Moreover, the search of defendant is supported on a separate and independent basis: his statement, prior to being searched, that he had a "roach" in his pocket. We find that this statement, along with the totality of the other facts and circumstances known to the deputies at the time, provided probable cause to believe that defendant had violated the Illinois Vehicle Code.

¶ 29                      B. Proof of Guilt Beyond a Reasonable Doubt

¶ 30    Defendant next contends that he was not proven guilty beyond a reasonable doubt. Specifically, defendant claims that his possession of 73.9 grams of methamphetamine was insufficient to prove beyond a reasonable doubt that he intended to deliver the narcotics.

¶ 31    When considering a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *People v. Robinson*, 167 Ill. 2d 397, 407 (1995). The trial court is responsible for drawing reasonable inferences from the evidence, and a reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that it creates a reasonable doubt as to defendant's guilt. *People v. Moss*, 205 Ill. 2d 139, 164-65 (2001).

¶ 32    To prove defendant guilty of possession with intent to deliver, the State was required to prove beyond a reasonable doubt that, among other things, defendant intended to deliver the narcotics in his possession. "Because direct evidence of intent to deliver is rare, such intent must usually be proven by circumstantial evidence." *Robinson*, 167 Ill. 2d at 408. The quantity of a controlled substance alone can be sufficient evidence to prove intent to deliver beyond

- 11 -

a reasonable doubt where the amount of the controlled substance could not reasonably be viewed as designed for personal consumption. *Id*. at 410-11. When the amount of substance seized is an amount that may be considered consistent with personal use, additional evidence of intent to deliver is required to support a conviction. *Id*. at 411. Other factors that may be probative of intent to deliver include the high purity of the drug confiscated; the possession of weapons; the possession of large amounts of cash; the possession of police scanners, beepers, or cellular telephones; the possession of drug paraphernalia; and the manner in which the substance is packaged. *Id*. at 408. These factors are not exclusive, and the determination of whether the inference of intent to deliver was sufficiently raised must be made on a case-by-case basis. *Id*. at 412-13.

¶ 33 In this case, defendant was in possession of 73.9 grams of methamphetamine. This is a significant amount of methamphetamine, and it certainly supports the inference that defendant intended to deliver the narcotics. We note that the amount of methamphetamine possessed by defendant was not the lowest amount in the statutory scheme. See 720 ILCS 646/55(a)(2)(A) (West 2020) (regarding possession of less than five grams with intent to deliver). The 73.9 grams of methamphetamine was much closer to the high end (less than 100 grams) than the low end (15 or more grams) of the provision under which defendant was convicted. 720 ILCS 646(a)(2)(C) (West 2020). This is the type of case in which it is possible to conclude that such an amount was not for defendant's personal use even without an expert offering that opinion. See *Robinson*, 167 Ill. 2d at 413.

¶ 34 Deputies also found a scale in defendant's vehicle. The presence of a scale, which is often used in the sale of narcotics, adds to the reasonable inference of intent. See, *e.g*., *id.* at 408;

*People v. Williams*, 200 Ill. App. 3d 503, 518 (1990); *People v. McCarty*, 356 Ill. App. 3d 552, 565 (2005); *People v. Wilkerson*, 2016 IL App (1st) 151913, ¶ 70.

¶ 35    It is true that other factors which might have added weight to the State's evidence of intent were not present in this case. For example, the methamphetamine was not divided into a number of small baggies, and defendant was not found to be in possession of weapons or a large quantity of cash. However, the absence of these other factors does not mean that the State did not meet its burden. Our supreme court has made clear that the factors listed in *Robinson* are merely examples that are not inflexible and that the absence of such factors does not preclude a finding of intent to deliver. See *People v. Bush*, 214 Ill. 2d 318, 327-28 (2005); see also *Williams*, 200 Ill. App. 3d at 518-19 (stating that the mere absence of some of the *Robinson* factors does not mean that the State did not prove intent to deliver beyond a reasonable doubt when other factors which supported a reasonable inference of intent were present). Thus, at most, the absence of some of these factors in this case could give rise to a competing inference that defendant did not intend to deliver the narcotics. However, so long as the State presented sufficient evidence to support an inference of intent, this issue presented a "routine sufficiency of the evidence question" in which it was the province of the trial court, as the finder of fact, to draw the reasonable inferences from the evidence. See *Bush*, 214 Ill. 2d at 328-29 (stating that where none of the *Robinson* factors were present, but other factors establishing intent to deliver were introduced at trial, the case presented a "routine sufficiency of the evidence question").

¶ 36    We find that the State presented sufficient evidence in this case to permit the trial court to draw a reasonable inference of intent to deliver, and we cannot say that the evidence the court relied upon was so unsatisfactory or improbable that it created a reasonable doubt as to defendant's guilt. Accordingly, we have no basis to reverse the court's determination.

¶ 37                          III. CONCLUSION

¶ 38         For the reasons stated, we affirm the trial court's judgment.

¶ 39         Affirmed.